S07A1437. MOORE v. THE STATE.
(656 SE2d 796)

HINES, Justice.

Brandon Trey Moore appeals his conviction for felony murder while in the commission of cruelty to children in the first degree and the denial of his motion for new trial in connection with the death of 14-month-old Preston Dinsbeer. He challenges the sufficiency of the evidence and the trial court's refusal to give certain charges to the jury. Finding the challenges to be without merit, we affirm.[1]

---

[1] The act of child cruelty resulting in the child's death occurred on January 7, 2004. During the March 2004 term, a Glynn County grand jury returned a five-count indictment against Moore charging him with: Count 1 – the malice murder of Preston Dinsbeer; Count 2 – the felony murder of Preston Dinsbeer while in the commission of cruelty to children in the first degree as set forth in Count 3 of the indictment; Count 3 – cruelty to children in the first degree by maliciously causing cruel and excessive physical and mental pain to Preston Dinsbeer by intentionally committing multiple acts of physical assault against the child which resulted in his death; Count 4 – cruelty to children in the first degree by wilfully depriving Preston Dinsbeer of necessary sustenance to the extent that the child's health was jeopardized in that Moore failed to obtain timely medical assistance for the child when the child was in his care and was seriously injured; and Count 5 – cruelty to children in the first degree in that, between August 1, 2003 and December 31, 2003, Moore maliciously caused cruel and excessive physical and mental pain to Preston Dinsbeer by intentionally committing an act of physical assault against him resulting in severe bruising on the child's arm. Moore was tried before a jury April 4-8, 2005, and found guilty of Counts 2 and 3; he was found not guilty of Counts 1 and 5, and

The evidence construed in favor of the verdicts showed that on the morning of January 7, 2004, Anita Horton left her 14-month-old son, Preston, in the care of her boyfriend, Moore, at the mobile home where Moore was residing. Moore had never cared alone for the child before, but Horton left the boy with him because Moore insisted on it, saying that he wanted to "bond with him." When Horton left for work, Preston had eaten his cereal and was awake, alert, and fine. Shortly before 3:00 p.m., emergency personnel arrived at the mobile home in response to a 911 call; Moore let an emergency worker in, initially telling him that he had dropped the baby. The responder found Preston lying on a mattress on the floor of a bedroom; he was not breathing and was in cardiac arrest. As the responder attempted to revive the child, Moore stated that the boy had fallen off the bed and pointed to a top bunk bed. The baby was taken to a local hospital, where medical personnel were able to restore a heartbeat but not the child's breathing; the infant was put on a ventilator. Two hours later, Preston was "life-flighted" to a hospital in Savannah for advanced pediatric life support care. The following day, the child was removed from life support because he was determined to be brain dead.

Moore gave yet another account of what happened to the child while he was in his care. He told an investigator that he had been playing with the child by tossing him in the air and catching him, and that he missed catching the child when he was attempting to "shoo the dog away." He stated, "[h]e went to grab Preston and accidentally hit him, causing him to turn upside down with his head closer to the ground. And . . . that Preston fell to the ground on the area of his neck, back of his head and shoulder area. And . . . when Preston hit the floor, he heard a thud or a pop sound." At trial, Moore admitted responsibility for the child's death, but claimed it was an accident.

The pathologist who performed the autopsy on Preston testified that the child had sustained multiple blunt force traumas to the head, cerebral edema, blunt force trauma to the stomach area causing internal bleeding and damage to the liver and bowel, retinal hemorrhages, bleeding inside the nerve roots of the spinal cord, soft tissue hemorrhage of the posterior ribs, bruising on the arms, chin, and genitals, and injuries on the feet caused by a bite or a similar type force. The doctor further testified that the type, severity, and number

---

of simple battery as a lesser included offense in Count 5. The trial court granted Moore a directed verdict on Count 4. On April 8, 2005, Moore was sentenced to life in prison on Count 2; Count 3 merged for the purpose of sentencing. Moore filed a motion for new trial on May 4, 2005, an amendment to the motion on February 16, 2007, and a second amendment to the motion on February 20, 2007. The motion for new trial, as amended, was denied on March 20, 2007. A notice of appeal was filed on April 19, 2007, and the case was docketed in this Court on June 7, 2007. The appeal was submitted for decision on July 3, 2007.

of injuries sustained were not consistent with a single-type force like falling from a bed or from tossing the child in the air and then dropping him; he concluded that Preston died as the result of multiple blunt force injuries, commonly known as Shaken Impact Syndrome or Shaken Baby Syndrome. A pathologist testifying for the defense agreed that there were at least seven distinct impact sites on the baby's head, and approximately 105 impact sites on the baby's body.

The State presented evidence that in 2002, Moore's six-month-old son was left in his care, and when the baby was returned to his mother, the mother discovered unexplained bruises and other injuries on the child, causing her to take the child to a hospital emergency room.

1. Contrary to Moore's contention, the evidence was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of felony murder with cruelty to children in the first degree as the underlying felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). It is the province of the jury to assess the credibility of the witnesses and to resolve any conflicts in the evidence. *Jackson v. State*, 282 Ga. 668 (653 SE2d 28) (2007). As to Moore's assertion that the evidence was insufficient to establish the pain element of cruelty to children, evidence of a child's age, the extent of injuries, the nature of the assault to which the child was subjected, and the force with which the child was struck is sufficient evidence from which the jury can conclude whether the defendant caused the child cruel or excessive physical pain. *Folson v. State*, 278 Ga. 690, 691-692 (1) (606 SE2d 262) (2004).

2. Moore contends that the trial court erred by refusing to charge the jury on simple battery as a lesser included offense of Count 3, cruelty to children in the first degree. He argues that the evidence at trial "supported the possible inference" that he committed a simple battery when he allegedly repeatedly tossed the child into the air, catching him by his ankles, swinging him to the side, and releasing him back into the air, eventually dropping him because the child "might have found this type of rough play offensive." But, the contention is unavailing.

The evidence did not authorize an inference of simple battery in regard to the allegations in Count 3. See footnote 1, supra. The crime of simple battery is committed when a person either "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another," OCGA § 16-5-23 (a) (1), or "[i]ntentionally causes physical harm to another," OCGA § 16-5-23 (a) (2). Moore maintained that the child's fatal injuries were the result of an accident and not any intent to cause harm to the child. His trial testimony was that at the time the infant dropped to the ground, he was merely playing with him, and prior to that time had stopped swinging and catching the

child by the ankles, which he now claims was the "offensive" play, and instead was throwing him in the air and catching him above the stomach. Moore claimed that the child sustained his injuries because Moore merely failed to catch him when he became distracted; Moore stated, "I don't know how it happened but he, I didn't catch him."

It cannot be found to be error to refuse to charge a lesser included offense if the jury would be unauthorized to return that verdict based on the evidence. *Watson v. State*, 235 Ga. 461, 466 (5) (219 SE2d 763) (1975). Even assuming that simple battery as set forth in either subsection (1) or subsection (2) of OCGA § 16-5-23 (a) can be a lesser included offense of cruelty to children in the first degree, it is not in this case because there was simply no evidence to support the offense of simple battery. Again, by Moore's own account, he had no intent to make insulting or provoking physical contact with the child or to cause the child physical harm; he claimed that he intended to engage only in play with the child, albeit allegedly strenuous play, and that the child's injuries were the result of an accidental fall. If the jury believed that an accident occurred, no battery was committed. *Smith v. State*, 261 Ga. App. 106, 109 (2) (581 SE2d 713) (2003). However, if the jury accepted the State's evidence, then it was authorized to find that Moore intentionally and fatally assaulted the child, thereby maliciously causing the child cruel and excessive physical and mental pain. In the circumstances, as here, where the evidence demonstrates commission of the completed offense as charged or that there was no criminal offense committed, the trial court is not required to charge on a lesser included offense. *Martin v. State*, 268 Ga. 682, 685 (7) (492 SE2d 225) (1997).

Accordingly, it was not error for the trial court to refuse to charge the jury on simple battery as a lesser included offense of Count 3.

3. Moore contends that the trial court erred by refusing to charge the jury on involuntary manslaughter in the commission of a lawful act in an unlawful manner, OCGA § 16-5-3 (b), as a lesser included offense of Count 2, the felony murder charge. However, Moore filed a written request to charge the jury on involuntary manslaughter as a lesser included offense as set forth in OCGA § 16-5-3 (a), that is, in the commission of an unlawful act, namely reckless conduct, and the trial court so instructed the jury. He did not file a written request to charge the jury on involuntary manslaughter in the commission of a lawful act in an unlawful manner as set forth in OCGA § 16-5-3 (b). Absent a timely written request for a charge on a lesser included offense, the failure of the trial court to so charge the jury is not error. *Young v. State*, 280 Ga. 65, 68 (10) (623 SE2d 491) (2005). What is more, the evidence, including Moore's own version of events, did not warrant a charge on lawful act-unlawful manner involuntary manslaughter. *Watson v. State*, supra at 466 (5).

4. Finally, there is no merit to Moore's contention that it was error for the trial court to give the pattern jury instruction on the State's burden of proof as it relates to reasonable doubt,[2] and refuse to give his Request to Charge No. 3, containing language from *Lumpkin v. State*, 152 Ga. 229, 230 (109 SE 664) (1921).[3] The failure to give a jury charge in the precise language requested is not a cause for reversal where the given instruction substantially covers the applicable principles of law. *Walker v. State*, 282 Ga. 406, 408 (2) (651 SE2d 12) (2007). Moreover, the pattern charge's mention of jurors "seeking the truth" does not, as Moore urges, dilute or cause confusion over the State's burden of proof and the role of the jury by suggesting that the jurors embark on "their own intuitive search for the truth." In criminal cases, the factfinder does have the task of seeking the truth. *Sherrod v. State*, 280 Ga. 275, 276 (627 SE2d 36) (2006). But, the jury is to determine the truth in view of the evidence, considered in light of the court's instructions. *Mayfield v. State*, 276 Ga. 324, 331 (2) (b) (578 SE2d 438) (2003). The court's instruction properly focused the jurors on their consideration of the evidence presented at trial.

*Judgments affirmed. All the Justices concur.*

---

[2] The portion of the court's charge at issue is the following:

However, the State is not required to prove the guilt of the accused beyond all doubt or to a mathematical certainty. A reasonable doubt means just what it says. It is a doubt of a fair-minded, impartial juror, honestly seeking the truth. It is a doubt based upon, it is a doubt based upon common sense and reason. It does not mean a vague or arbitrary doubt, but is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, and a conflict in the evidence, or any combination of these. If after consideration of all the facts and circumstances of this case, your minds are wavering, unsettled or unsatisfied, then that is a doubt of the law, and you should acquit the Defendant; but, if that doubt does not exist in your minds as to the guilt of the accused, then you would be authorized to convict the Defendant. If the State fails to prove the Defendant's guilt beyond a reasonable doubt, it would be your duty to acquit the Defendant.

See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd Edition), § 1.20.10, pp. 9-10.

[3] Request to Charge No. 3 read:

I charge you that the reasonable doubt which the law recognizes and gives the defendant the benefit of, where it exists, is not a vague, indefinite or capricious doubt; but it is such a doubt as arises from the evidence or want of evidence, and causes your mind to be halting, hesitating and unsatisfied, and refusing to reach a conclusion that is satisfactory to you. If you have resting on your minds after receiving the law from the Court and applying it to the facts and circumstances of the case, a doubt, and this doubt grows out of the case from the want, weakness, insufficiency, or conflict in the evidence, and leaves an honest juror's mind unsettled as to whether the state has met the burden of proof of beyond a reasonable doubt, the benefit of such a doubt should be given to the Defendant and he should be acquitted.

DECIDED JANUARY 28, 2008 —
RECONSIDERATION DENIED FEBRUARY 25, 2008.

*Michael C. Taylor*, for appellant.
*Stephen D. Kelley, District Attorney, Diane L. Dodd, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.