### S08A0326. UPTON v. PARKS.
(664 SE2d 196)

HUNSTEIN, Presiding Justice.

Warden Steve Upton appeals an order of the Superior Court of Chattooga County granting Deunte Quintellas Parks' petition for the writ of habeas corpus. Finding that the habeas court erred on all three of its grounds for granting the writ, we reverse.

Parks was convicted in 1999 of two counts of malice murder and related crimes in connection with a July 1996 shooting. Through his trial counsel, Parks filed a motion for new trial, which was denied, and then appealed to this Court, which affirmed his convictions and sentences. *Parks v. State*, 275 Ga. 320 (565 SE2d 447) (2002). Subsequently, through new counsel, Parks filed a petition for habeas corpus. An evidentiary hearing was held on Parks' amended habeas petition on June 28, 2005 and continued on December 2, 2005, during which a total of eight witnesses testified, including Parks himself and both of his trial attorneys. On August 23, 2007, the habeas court granted Parks' petition, finding (1) that the State had violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), by failing to disclose a Georgia Bureau of Investigation (GBI) report that may have been helpful to Parks' defense; (2) that Parks' Sixth Amendment rights were violated by his trial counsel's failure to call alibi witnesses at trial despite Parks' repeated requests that they do so; and (3) that Parks did not knowingly and voluntarily waive his right to testify. This appeal ensued.

1. The habeas court held that the State suppressed a GBI report that created reasonable doubt as to whether Parks was in fact the shooter. This report, referred to as the "NIBIN report"[1] recorded a match between the shell casings recovered from the July 1996 shooting and those recovered from another unsolved "walk-by" shooting that had occurred the previous month. The NIBIN report also states that police had interviewed a witness to the prior shooting "who described the suspects." Though the NIBIN report was generated in November 1996, Parks did not obtain a copy of the report

---

[1] "NIBIN" is the acronym for the National Integrated Ballistics Identification Network, which is comprised of jurisdictions which deploy the National Integrated Ballistics Identification System, a computerized database developed by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to identify links between ballistics evidence from crimes within the network.

until habeas proceedings.[2]

Because Parks did not pursue his *Brady* claim until habeas proceedings, the initial question is whether Parks can establish sufficient cause and prejudice to overcome his procedural default. See OCGA § 9-14-48 (d). While the parties argue vigorously over the "cause" element, we need not decide whether defense counsel's lack of knowledge of the NIBIN report constitutes sufficient cause to avoid procedural default, because we are satisfied that Parks has failed to establish the requisite prejudice. See *Schofield v. Meders*, 280 Ga. 865, 869-870 (4) (632 SE2d 369) (2006) (rejecting petitioner's attempt to avoid procedural default regarding certain alleged *Brady* materials because prejudice not established).

In assessing prejudice for purposes of procedural default with respect to an alleged *Brady* violation, we have held that " 'the underlying claim and the prejudice analysis necessary to satisfy the cause-and-prejudice test are coextensive.' " (Citation omitted.) *Walker v. Johnson*, 282 Ga. 168, 169 (1) (646 SE2d 44) (2007). In other words, the question of prejudice turns on whether the suppression of evidence was significant enough to constitute a *Brady* violation. See *Waldrip v. Head*, 279 Ga. 826, 829 (II) (B) (620 SE2d 829) (2005) (insufficient prejudice shown to sustain successful *Brady* claim or overcome procedural default).

To establish a *Brady* violation, the defendant must show, inter alia, that the evidence allegedly suppressed by the State was material to his defense.

> "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." [Cit.]

*Rogers v. State*, 257 Ga. 590, 592 (3) (361 SE2d 814) (1987). Here, Parks' *Brady* claim fails for the simple reason that he has not shown that the NIBIN report, and, specifically, its reference to a witness' description in the earlier shooting, was actually exculpatory in any way. Parks argues that, had defense counsel known about the witness to the earlier incident, they could have sought to get the witness' description of the perpetrator to evaluate whether it matched Parks' appearance; had the description not matched, Parks contends, this revelation would have been powerfully exculpatory and may also have led to a shift in defense counsel's strategy, as

---

[2] The record reflects, however, that defense counsel did learn during trial of the possibility that some ballistics link with another crime had been identified.

discussed in Division 2, infra, of focusing Parks' defense on illuminating the deficiencies in the State's case rather than presenting Parks' alibi defense. The flaw in Parks' position, however, is that he has presented no evidence that the witness' description did not match Parks and thus ignores the equally likely scenario that the witness' description would have been consistent with Parks' appearance, a fact that would have been highly damaging. "The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U. S. 97, 109-110 (III) (96 SC 2392, 49 LE2d 342) (1976). Parks' failure on habeas to present any evidence[3] supportive of his notion that the description would have been inconsistent with Parks' appearance renders purely speculative his characterization of the NIBIN report as exculpatory. See *Walker v. State*, 264 Ga. 79, 81 (4) (440 SE2d 637) (1994) (no *Brady* violation where undisclosed witness statement contained only "speculations to the police that some unnamed person (presumably other than appellant) was the perpetrator of the crimes"). Accordingly, Parks has failed to carry his burden to prove materiality, which defeats both his *Brady* claim and his attempt to overcome procedural default. The trial court thus erred by granting habeas relief on this claim.

2. The habeas court also held that Parks' Sixth Amendment right to compulsory process was violated when his trial counsel made the decision, over Parks' alleged objection, not to call at trial two witnesses, Glen and Moriah Griffin, who would have testified that Parks was asleep at their home at the time of the shooting. Although the State argues that this claim was procedurally defaulted because it was not raised post-trial or on appeal, see OCGA § 9-14-48 (d), Parks raised the issue on habeas in the context of a claim for ineffective assistance of trial counsel, which, due to the fact that his trial counsel represented him through appeal, was clearly not defaulted. See generally *Hood v. State*, 282 Ga. 462, 463 (651 SE2d 88) (2007). Thus, the issue for resolution is whether counsel's decision not to present Parks' alibi witnesses amounted to a Sixth Amendment violation or otherwise constituted ineffective assistance of counsel.

The habeas court held that "[u]nder the 6th amendment, Petitioner is entitled to decide whether or not to call witnesses in his favor." This holding misapprehends the nature of the Sixth Amend-

---

[3] This evidence could have been presented in the form of the police report from the prior incident with the actual witness description or the testimony of the witness himself, either in person or by some other legally acceptable substitute. See *Dickens v. State*, 280 Ga. 320 (2) (627 SE2d 587) (2006).

ment's right to compulsory process, which encompasses the accused's right to compel production of evidence in his favor, see *Dean v. State*, 267 Ga. 306 (477 SE2d 573) (1996), but does not speak to the allocation of decision-making authority regarding the calling of witnesses and other trial strategy as between the accused and his counsel. On the latter issue, this Court has quoted with approval the American Bar Association Standards, relating to the Administration of Criminal Justice:

> "Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf. . . . *The decisions on which witnesses to call,* whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions *are the exclusive province of the lawyer after consultation with his client.*"

(Emphasis supplied.) *Reid v. State*, 235 Ga. 378, 379 (1) (219 SE2d 740) (1975). Accord *McDaniel v. State*, 279 Ga. 801 (2) (c) (621 SE2d 424) (2005). Given that the authority to decide which witnesses to call ultimately rests with defense counsel, counsel's exercise of that authority, even in a manner with which the accused disagrees, cannot form the basis for a Sixth Amendment compulsory process violation.

Whether counsel's decision not to present the alibi witnesses constituted ineffective assistance of counsel is a separate issue. To establish ineffective assistance, Parks must show both deficient performance by trial counsel and prejudice to his defense resulting therefrom. *McDaniel v. State*, supra, 279 Ga. at 801 (2). Decisions based on counsel's reasonable trial strategy do not constitute deficient performance, and "this Court does not evaluate trial counsel's tactics and strategic decisions in hindsight." (Footnote omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). In this case, both of Parks' trial counsel testified at the habeas hearing that the issue of whether to call Parks' alibi witnesses was debated between them and discussed with Parks. Parks' lead counsel, Dwight Thomas, testified that he decided not to present Parks' alibi witnesses because (1) he believed Parks' defense of misidentification, based on challenges to the credibility of the eyewitnesses and the lack of any physical evidence linking Parks to the crime, was strong enough on its own; and (2) his concerns about the credibility of

Parks' two alibi witnesses.[4] Thomas testified further that, in his opinion,

> sometimes it's best to try the case in such a way where you attack the State's case, you put the burden on them and you don't have the jury focusing on your evidence, you have them focusing on the lack of their's [sic]. . . . I explained to [Parks] that if those alibi witnesses got on that stand and fell apart he was through for sure.

Thomas' testimony clearly demonstrates that the decision not to call Parks' alibi witnesses was a fully considered and well reasoned decision under the circumstances. Accordingly, Parks has failed to establish deficient performance in this respect on the part of defense counsel. The habeas court thus erred by granting habeas relief on the basis of the failure to present alibi witnesses.

3. The habeas court also granted relief based on its finding that "the record is silent" on the issue of whether Parks knowingly and voluntarily waived his right to testify at trial. However, the trial transcript reveals a colloquy among the trial court, defense counsel and Parks on this very issue, in which the trial court explained in unequivocal terms that Parks had the right to testify, that the decision was Parks' alone to make, and that he was not required to follow his counsel's advice in making his decision. At the conclusion of that colloquy, Parks affirmed to the court that he did not wish to testify. In addition, at the habeas hearing, Parks admitted that he had agreed with his counsel on the decision not to testify. Accordingly, the habeas court's finding on this issue was clearly erroneous, see *Upton v. Johnson*, 282 Ga. 600, 602 (652 SE2d 516) (2007), and we reverse the granting of the writ on that basis.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 7, 2008 —
RECONSIDERATION DENIED JULY 25, 2008.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellant.

---

[4] These concerns included the fact that the witnesses were siblings of one another and friends of Parks; that they told different versions of their stories to Parks and to defense counsel; that, because both claimed to have been asleep at the exact time of the shootings, neither could state definitively that Parks too was asleep in their home at that time; and that one of the witnesses was a fugitive and was implicated in prior difficulties with one of the victims.