S08G1371. CLEVELAND v. THE STATE.
(674 SE2d 289)

SEARS, Chief Justice.

In 2005, a Harris County jury convicted Sean David Cleveland of methamphetamine possession and related crimes. The trial court sentenced him to twenty years in prison with ten years to serve, and Cleveland filed a motion for new trial and amended motion for new

trial. The trial court denied the motion, rejecting Cleveland's claim that he received ineffective assistance of trial counsel because he would have accepted a plea offer but for his counsel's deficient performance. The Court of Appeals affirmed.[1] We granted certiorari to decide whether the Court of Appeals properly applied our decision in *Lloyd v. State*.[2] As explained below, the Court of Appeals correctly applied *Lloyd*, and we therefore affirm.

Cleveland was pulled over in Harris County on July 7, 2004, and arrested for driving on a suspended license. While conducting an inventory of the vehicle prior to its being towed, the officer found six individual bags of methamphetamine, a bottle containing red powder, digital scales, a glass smoking device, a straw with methamphetamine residue in it, and a garden hose with a smaller hose inside. The officer called Cleveland's residence to get someone to come and pick up Cleveland's dog. Two men came and were also arrested when methamphetamine was found in their vehicle.

On July 9, 2004, a search warrant was executed for Cleveland's home. Officers found items commonly used in connection with the manufacture of methamphetamine: a bottle of pure ephedrine, burn piles, empty cold medicine packages, strike plates from match books, and security cameras located around the premises. During the search, Cleveland, who was out of jail on bond, returned home and was informed that a search was being performed pursuant to a warrant.

Cleveland was indicted for possession of methamphetamine with intent to distribute, criminal attempt to commit trafficking in methamphetamine, driving on a suspended license, and no proof of insurance. Cleveland was offered and rejected a plea bargain for probation and a fine. Trial commenced on November 28, 2005. During jury selection, defense counsel learned for the first time that the State's evidence included items seized in the house search. Counsel filed a motion to suppress, which was denied, and the trial proceeded. Cleveland was convicted of possession with intent to distribute, criminal attempt to commit trafficking, and no proof of insurance. He was sentenced to twenty years in prison with ten years to serve.

At the hearing on the motion for new trial, defense counsel admitted that he failed to review the State's file as allowed under the prosecutor's "open file" policy, so he did not realize evidence gathered at the home would be used at trial. Cleveland testified that had he known evidence obtained from his home would be used

---

[1] *Cleveland v. State*, 290 Ga. App. 835 (660 SE2d 777) (2008).
[2] *Lloyd v. State*, 258 Ga. 645 (373 SE2d 1) (1988).

against him at trial, he would have accepted the State's offer of a plea bargain. The trial court denied the motion for new trial, and Cleveland appealed, claiming ineffective assistance of trial counsel.

The Court of Appeals found that although counsel's performance was objectively unreasonable, Cleveland was not prejudiced, and the convictions should therefore stand. The Court of Appeals reasoned that the evidence supports a finding, implicit in the trial court's ruling, that Cleveland failed to show a reasonable probability that he would have pled guilty but for counsel's errors. We granted certiorari to review the Court of Appeals' application of the decision in *Lloyd*.

In *Lloyd*, we recognized, based on governing United States Supreme Court precedent, that the Sixth Amendment guarantees a criminal defendant's right to competent counsel performing to the standards of the legal profession in deciding whether or not to plead guilty.[3] The Supreme Court held over sixty years ago that "[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."[4] The plea bargaining process is a critical stage of criminal proceedings where an attorney's involvement is crucial because "[a]vailable defenses may be as irretrievably lost, if not then and there asserted."[5] "Indeed, with plea bargaining the norm and trial the exception, for most criminal defendants [the plea process] is *the* critical stage of their prosecution."[6]

The two-part test of *Strickland v. Washington* ordinarily applies to claims of ineffective assistance of counsel in the plea process.[7] Thus, to prevail on such a claim, the defendant must demonstrate both that trial counsel's performance was unprofessional, and that but for counsel's errors, the outcome of the proceedings would have been different.[8] Where, as here, the defendant demonstrates that counsel's representation in the plea process "fell below an objective

---

[3] *Lloyd*, 258 Ga. at 646 (citing *Hill v. Lockhart*, 474 U. S. 52, 57-58 (106 SC 366, 88 LE2d 203) (1985)). See also *McMann v. Richardson*, 397 U. S. 759, 771 & n. 14 (90 SC 1441, 25 LE2d 763) (1970).

[4] *Von Moltke v. Gillies*, 332 U. S. 708, 721 (68 SC 316, 92 LE 309) (1948) (plurality opinion).

[5] *Hamilton v. Alabama*, 368 U. S. 52, 54 (82 SC 157, 7 LE2d 114) (1961).

[6] *Wright v. Van Patten*, 552 U. S. 120, 127 (128 SC 743, 169 LE2d 583) (2008) (Stevens, J., concurring in the judgment) (citation and punctuation omitted; emphasis supplied).

[7] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). See *Wright*, 552 U. S. at 124.

[8] *Strickland*, 466 U. S. at 687-696; *Smith v. State*, 284 Ga. 599, 601 (669 SE2d 98) (2008).

standard of reasonableness,"[9] the inquiry turns to whether the defendant has demonstrated the required prejudice.[10]

The district attorney contends that the Court of Appeals erred in applying the prejudice prong of the *Strickland* test. According to the district attorney, the Court of Appeals should have focused its prejudice inquiry on whether the outcome of the *trial* would have been different but for counsel's deficient representation, not whether Cleveland would have *pled guilty* but for his attorney's errors. However, this argument is foreclosed by the Supreme Court's decision in *Hill v. Lockhart* and our own holding in *Lloyd.*

In *Hill*, the Supreme Court held as follows:

> In the context of guilty pleas, the . . . second, or "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[11]

In *Lloyd*, we held that the same analysis governs in the converse situation, i.e., where the defendant's complaint is that he went to trial instead of pleading guilty because of counsel's deficient representation.[12] We did so despite our recognition that "[t]here is a vast difference between what happens to a defendant when he pleads guilty as opposed to what occurs when a plea agreement is rejected," and that "[t]he rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process" while accepting a plea agreement "waives many of these protections."[13] Thus, the proper question at the prejudice step is whether Cleveland demonstrated that, but for counsel's deficient performance, there is a reasonable probability that he would have accepted the State's plea offer.[14]

We held in *Lloyd* that in order to find prejudice in this type of situation, there must be "some indication that the defendant was

---

[9] *Strickland*, 466 U. S. at 688.

[10] See *Hill*, 474 U. S. at 57-58; *Lloyd*, 258 Ga. at 648-649.

[11] *Hill*, 474 U. S. at 58-59. Accord *Roe v. Flores-Ortega*, 528 U. S. 470, 485 (120 SC 1029, 145 LE2d 985) (2000).

[12] *Lloyd*, 258 Ga. at 648-649.

[13] *Lloyd*, 258 Ga. at 646, n. 4 (quoting *Johnson v. Duckworth*, 793 F2d 898, 900 (7th Cir. 1986)).

[14] See *Roe*, 528 U. S. at 484.

amenable to the offer made by the state."[15] We rejected bright-line rules adopted by some courts for determining prejudice under similar circumstances, such as presuming the defendant would have accepted any plea offer more favorable than the eventual outcome of the trial, or requiring a defendant to show that he or she evinced an interest in pleading guilty prior to the verdict.[16] Instead, we said that "[w]e prefer to examine the facts of each case and grant relief where there is at least *an inference* from the evidence that the defendant would have accepted the offer as made or something similar" and noted in passing that "[s]uch an inference could be drawn even where the evidence is disputed or unclear on this question."[17]

According to Cleveland, the italicized language reveals this Court's intent "to lower the evidentiary burden in showing prejudice by a defendant who has demonstrated that he received deficient performance in regards to a plea offer." Cleveland argues that in *Lloyd*, we "did not require [the] defendant to make a showing by a preponderance of the evidence that he would have accepted the plea offer if he had been given effective assistance of counsel" and instead crafted a rule "essentially giving [the] defendant the benefit of the doubt where there is some evidence to support his assertion that he would have accepted a plea offer." Cleveland explains that we did this because of "the difficulties faced by a defendant in trying to prove what he would have decided if properly advised in regards to a plea offer."

The Court of Appeals rejected Cleveland's interpretation of *Lloyd*, and so do we. In *Lloyd*, we merely noted that the evidence presented to show ineffective assistance of counsel failed to support even an "inference" that the defendant would have accepted the plea offer, much less amounted to the affirmative demonstration of prejudice required by the second prong of the *Strickland* test.[18] We did not intend by this statement to lower the evidentiary burden for establishing *Strickland* prejudice in the plea bargain context. Thus, we agree with the Court of Appeals' interpretation of *Lloyd*:

> The above-quoted language should not be used to alter the well-established "clearly erroneous" standard of review for ineffective assistance of counsel. Simply because an inference *"could be* drawn even where the evidence is disputed or unclear on this question," does not mean that a trial

---

[15] *Lloyd*, 258 Ga. at 648.

[16] *Lloyd*, 258 Ga. at 648.

[17] *Lloyd*, 258 Ga. at 648 (emphasis supplied).

[18] *Lloyd*, 258 Ga. at 649.

court is *required* to do so in cases where the evidence is disputed. . . . [W]e decline to apply this language from *Lloyd* to find prejudice in this case merely because the defendant testified after the fact that he would have accepted the State's plea offer but for counsel's ineffective assistance.[19]

The sum total of Cleveland's evidence that he would have accepted the plea offer but for his counsel's deficient performance is the following exchange between Cleveland and his new counsel at the motion for new trial hearing:

Q. . . . Now, why didn't you take that offer?
A. Well — I guess, dumb.
Q. Well, did you know they were going to introduce evidence against you —
A. No, sir.
Q. — seized at — if you had known that they were going to introduce evidence that was seized from the house, would you have taken the plea offer?
A. Yes, sir. One year probation, thousand dollar fine. I've been down 16 months now.

Unsurprisingly, the trial court did not find Cleveland's after-the-fact, self-serving assertion credible, just as the jury had rejected Cleveland's false claims at trial that he had nothing to do with the extensive drug manufacturing materials found in his house and van.[20] Decisions regarding credibility are uniquely the province of the trier of fact.[21]

The record supports the trial court's finding that Cleveland failed to demonstrate, through his testimony at the motion for new trial hearing or otherwise, that but for his counsel's failure to avail himself of the State's open file policy, there is a reasonable probability that Cleveland would have accepted the State's pretrial plea offer. Before, during, and after trial, Cleveland adamantly and consistently insisted that he had nothing to do with the drugs and other items that formed the basis for his convictions. After rejecting a pretrial

---

[19] *Cleveland*, 290 Ga. App. at 840 (citations omitted).

[20] It is worth noting that even though Cleveland's trial counsel testified at the hearing on the motion for new trial, he was never asked by Cleveland's new attorney whether he would have advised Cleveland to accept the State's plea offer had he known at the time that the evidence seized from the house would be used against Cleveland at trial.

[21] *Lewis v. State*, 283 Ga. 191, 192 (657 SE2d 854) (2008); *Moore v. State*, 283 Ga. 151, 153 (656 SE2d 796) (2008). See also *Lessee of Ewing v. Burnet*, 36 U. S. (11 Pet.) 41, 50-51 (9 LE 624) (1837) ("[I]t is the exclusive province of the [trier of fact] . . . to judge . . . the credibility of the witnesses, and the weight of their testimony . . . .").

plea deal in which he would have only received probation, Cleveland still chose to stand trial after he learned of the additional evidence seized from his house that would be used against him.[22] Cleveland did not immediately suffer the potential consequences posed by this additional evidence, however, because the trial court briefly suspended the trial proceedings in order to give Cleveland's counsel an opportunity to argue for the suppression of the evidence. After a full hearing on the motion to suppress with Cleveland in attendance, the motion was denied. Now armed with the knowledge that the evidence from the house would definitely be introduced at trial, Cleveland continued to maintain his steadfast insistence that he had nothing to do with any drugs. Cleveland took the stand in his own defense at trial and testified, with respect to any items found in the van and in his house, that he had nothing to do with them or with the manufacture of any methamphetamine. After being found guilty, Cleveland continued to argue his complete innocence, telling the jury "[y]ou guys are wrong. . . . I had nothing to do with it, nothing at all." Contrary to any indication that Cleveland would have pled guilty had he known about evidence from his house being used at his trial, Cleveland consistently indicated throughout the proceedings that no deal would have been appropriate, because he was completely innocent of any crime. In light of Cleveland's steadfast denials in the face of all of the evidence presented against him, it strains credulity for him to assert that he would have ever pled guilty.

Cleveland failed to carry his burden of proving a reasonable probability that, but for counsel's deficient performance, he would have pled guilty. Accordingly, he failed to show *Strickland* prejudice, and the trial court was correct to deny his motion for new trial.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who dissents.*

HUNSTEIN, Presiding Justice, dissenting.

This case involves an ineffective assistance of counsel claim raised in regard to appellant Sean David Cleveland's decision to reject a plea offer, consisting of probation and a fine, and instead proceed to trial where, upon conviction, he faced a mandatory minimum sentence of ten years imprisonment. I agree with the majority and the Court of Appeals that appellant established that his defense counsel's performance was objectively unreasonable for purposes of the attorney competence prong of the *Strickland v.*

---

[22] Although Cleveland claims that he did not know that this additional evidence would be used against him at trial, Cleveland did in fact know prior to rejecting the plea that the police had searched his house and found the very evidence that would later be used against him at trial. In fact, Cleveland arrived at the house while the search was actually taking place.

*Washington* test. On the legal issue raised in regard to the "inference" language in *Lloyd v. State*, 258 Ga. 645 (2) (b) (373 SE2d 1) (1988), I also agree with the majority that nothing in *Lloyd* changed the prejudice prong requirement that, to prevail on an ineffectiveness claim, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have accepted the plea. Where I disagree is whether appellant carried his burden of proving prejudice. Because my review of the record establishes that appellant proved a reasonable probability that he would have accepted the State's plea deal had defense counsel performed in a reasonably competent manner, I respectfully dissent.

The following facts are necessary to an understanding of this case. Appellant was stopped for driving a van with no tag on it and arrested for traffic violations. An inventory search of the van revealed drugs and drug paraphernalia behind the driver's seat and inside a cigarette purse located in the rear of the van on the passenger side. As noted by the Court of Appeals, the items in the van "were either not visible or immediately recognizable as contraband." *Cleveland v. State*, 290 Ga. App. 835, 838 (660 SE2d 777) (2008). Additionally, appellant claimed that the van was used primarily by another person and any contraband inside it belonged to that person.

Appellant, who had no previous criminal record, was charged with possession with intent to distribute methamphetamine and criminal attempt to traffic in methamphetamine, along with misdemeanor traffic offenses. The felony charges, however, were not based solely upon the evidence seized during the traffic stop but were also based upon incriminating evidence seized during a subsequent search of appellant's home. The evidence seized in the search of the home included, inter alia, "pure distilled ephedrine in a bottle in the home's refrigerator, a straw with residue in the bedroom, and numerous other items commonly used in the manufacture of methamphetamine in a burn pile on the property." *Cleveland v. State*, supra, 290 Ga. App. at 837. Surveillance cameras throughout the property and a surveillance monitoring device were also discovered. Id.

As detailed in the Court of Appeals' opinion, *Cleveland v. State*, supra, 290 Ga. App. at 838, defense counsel failed to discover that the State's case against appellant included any evidence other than that obtained during the traffic stop until after the start of appellant's trial. Thus, it is uncontroverted that defense counsel did not know about the evidence seized during the search of appellant's home prior to trial when appellant was offered a plea deal by the State that involved only probation and a fine, with no jail time. Counsel's advice

to appellant regarding the plea deal was necessarily influenced by counsel's unprofessional ignorance of critical, incriminating evidence the State intended to use against his client. As the Court of Appeals correctly recognized, "[w]ithout this information, [appellant] could not [have] ma[d]e an informed decision about whether to accept or reject the State's plea offer of straight probation." *Cleveland v. State*, supra, 290 Ga. App. at 839. Uninformed and ill-advised, appellant rejected the plea deal.

Compounding the errors caused by counsel's deficient performance in regard to the failures to examine the State's file in a reasonably professional manner and to provide meaningful advice in regard to the State's plea offer, the record establishes that defense counsel never sought to renew plea negotiations with the State after counsel learned about this critical evidence against his client.[23] The prosecutor stated at the new trial hearing that he was never approached by defense counsel on appellant's behalf "about a different plea deal, or going back to the old plea deal, or anything else like that" at any time after defense counsel learned about the evidence from the search of appellant's home. The prosecutor's statement confirmed appellant's own testimony that defense counsel did not discuss making any sort of plea agreement with the State after they discovered the evidence from the home search would be used.[24] Under these circumstances, I would recognize that defense counsel also performed deficiently by failing to approach the prosecutor about renewing plea negotiations after counsel learned about the incriminating evidence from the home search.

Appellant was tried and convicted of the felony charges. He was given the ten-year mandatory minimum sentence for attempted trafficking in methamphetamine[25] and a consecutive ten-year sentence for possession with intent to distribute methamphetamine. Appellant timely moved for a new trial asserting, inter alia, ineffective assistance of counsel, and, at the hearing on his motion, gave testimony in which he acknowledged he would have accepted the State's plea offer had he known that the State was going to introduce

---

[23] While the home-search evidence was new to the defense, it was not new to the State, which had been in full possession of all of the evidence when it originally offered appellant probation and a fine in exchange for his guilty plea.

[24] When defense counsel was asked whether he approached the State about re-issuing its plea offer, he could not affirmatively state that he did so but instead replied only that "[it] seems like we did, but I can't remember exactly how that went."

[25] See *Watson v. State*, 276 Ga. 212 (576 SE2d 897) (2003) (the one-half of maximum sentence provisions of OCGA § 16-4-8 not applicable to criminal attempt to traffic in drugs, which is instead governed by OCGA § 16-13-33).

the evidence seized from his house. The trial court thereafter denied the motion for new trial without explanation.[26]

The majority and the Court of Appeals both correctly held that the "reasonable probability" standard applies to the assessment of the prejudice prong in those ineffectiveness claims based on rejected guilty pleas and that this standard was not altered by language in *Lloyd v. State*, supra, 258 Ga. at 648-649 (2) (b). I fully concur with this holding.[27] However, I dissent from the majority's opinion and would reverse the judgment of the Court of Appeals because I find, based on my review of the record, that they both incorrectly assessed the evidence to conclude that appellant failed to establish a reasonable probability that he would have accepted the State's plea had defense counsel properly advised him about all of the evidence in the State's case against him.

I address the five evidentiary items set forth by the Court of Appeals for its holding, see *Cleveland v. State*, supra, 290 Ga. App. at 839, because, although those items were not directly adopted by the majority, neither were they expressly repudiated. The Court of Appeals first identified appellant's testimony at the hearing on the motion for new trial that he was "dumb" in declining the State's offer. That "dumb" decision, however, predated appellant's awareness that the State would be using the evidence seized from his home against him and thus it cannot shed any possible light on whether appellant would or would not have accepted the offer had he known of the home-search evidence.[28] The Court of Appeals next referenced

---

[26] Contrary to language in the majority opinion, the trial court made no express findings whatsoever regarding factual matters at issue in resolving the prejudice prong. This case is therefore distinguishable from *Larochelle v. State*, 231 Ga. App. 736 (4) (499 SE2d 371) (1998), cited by the Court of Appeals for the proposition that the evidence in this case " 'supports a finding, implicit in the trial court's ruling, that there was no reasonable probability' that [appellant] would have pled guilty but for counsel's ineffectiveness," *Cleveland v. State*, supra, 290 Ga. App. at 839-840, because the trial court in *Larochelle* "[a]pparently anticipating that the issue might be reached on appeal, ... entered a finding on the ... question of whether Larochelle would have accepted the plea offer made." Thus, although a judgment that is right for any reason will be affirmed, see *Abdulkadir v. State*, 279 Ga. 122, 125, fn. 16 (610 SE2d 50) (2005), this case does not involve a situation where an appellate court is re-assessing express factual findings by the trial court.

[27] Accordingly, I would recognize that language in cases such as *Burch v. State*, 289 Ga. App. 388, 389, fn. 1 (657 SE2d 294) (2008), intimating the contrary, should be deemed disapproved.

[28] The Court of Appeals, when noting that appellant did testify he would have accepted the State's offer had he known of the home-search evidence, also asserted that he did so "[o]nly after additional leading questioning by his counsel," *Cleveland v. State*, 290 Ga. App. at 839, so as to indicate that appellant gave this testimony only after he was improperly induced to do so by counsel. "A leading question is one which suggests the answer desired by the questioner." (Footnote omitted.) Green, Georgia Law of Evidence § 128, p. 254 (3rd ed.). Because the pertinent questioning, which is set forth in the majority opinion, clearly reflects no such

152

appellant's statement, at his sentencing after conviction, in which he protested his innocence.[29] I agree with the Court of Appeals that evidence of a defendant's post-conviction protestation of innocence is pertinent to the court's consideration whether the defendant would have accepted a guilty plea offer. See, e.g., *Cullen v. United States*, 194 F3d 401 (2nd Cir. 1999). However, it is only one factor in a determination that should be based on all relevant circumstances. Id. Accord *Lloyd v. State*, supra, 258 Ga. at 648 (adopting a case-by-case approach). Because other considerations in this case, as discussed below, compel the conclusion that there is a reasonable probability appellant would have accepted the plea agreement, I cannot agree with the Court of Appeals that this one statement alone supports a contrary holding.

Reserving, for the moment, the third item, the Court of Appeals next pointed to the fact that appellant, after learning during jury selection that the home-search evidence would be used against him, "did not seek to renew the earlier plea offer after learning about the true nature of the State's case." *Cleveland v. State*, supra, 290 Ga. App. at 839. Appellant is not a lawyer and, prior to the events at issue, had no criminal record. He could not reasonably have been expected to know, once his trial had already started, that plea negotiations could still be pursued so as to request defense counsel to renew them. Appellant certainly could not have initiated any renewed negotiations on his own without benefit of counsel and, as discussed earlier, the record is clear that counsel performed deficiently by failing to take any steps on behalf of his client to re-initiate negotiations. This evidentiary item utterly fails to support the Court of Appeals' conclusion that there is no reasonable probability appellant would have accepted a plea had he known "the true nature of the State's case." Id.

Given that the State was never approached about renewing the plea after appellant learned of the critical evidence during jury selection, the Court of Appeals' third fact is wholly unpersuasive, inasmuch as the prosecutor's statement that appellant was "adamant about going to trial," id., necessarily reflected appellant's uninformed understanding of his legal situation prior to trial.

Finally, the Court of Appeals relied upon the showing in the record that appellant "knew that the police searched his house."

---

improper leading by counsel, this matter is not supported by the record and can provide no basis for the Court of Appeals' holding.

[29] The transcript reveals that, in response to the trial court's inquiry during sentencing as to whether appellant had anything he wished to say, appellant responded, "You guys are wrong. I — I had nothing to do with it, nothing at all. That'd be all."

*Cleveland v. State*, supra, 290 Ga. App. at 839. However, the record also conclusively shows that appellant did not understand the legal significance of that search. The pertinent evidence, which is quoted by the majority, clearly establishes that appellant did not realize the items seized from his home during the search would be used as evidence against him at his trial. The constitutional right of a criminal defendant to effective assistance of counsel, which is a fundamental right essential to a fair trial, is grounded on the idea that persons like appellant who are unschooled in the law need professional assistance when it comes to understanding matters such as search warrants and the admissibility of incriminating evidence at trial. "'Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense . . . . He requires the guiding hand of counsel at every step in the proceedings against him.'" *Gideon v. Wainwright*, 372 U. S. 335, 344-345 (83 SC 792, 9 LE2d 799) (1963). See also *Heath v. State*, 268 Ga. App. 235 (601 SE2d 758) (2004) (defendant entitled to guiding hand of effective counsel during guilty plea negotiations). Appellant, even knowing police officers had searched his house, could not have made an intelligent and informed decision about the State's plea offer without professional advice by defense counsel regarding the legal status of the items seized during the search[30] and the effect such evidence might have on his chances of acquittal. Accordingly, I strongly reject the Court of Appeals' position that appellant's awareness of the search, by itself, constituted relevant proof to support its conclusion that appellant in all reasonable probability would have declined the State's plea offer.

The majority does not address these "facts" on which the Court of Appeals relied but instead grounds its holding on the basis that the "sum total" of appellant's evidence consisted of his "after-the-fact and self-serving" assertion that he would have pled guilty except for counsel's deficient performance. Maj. Op., p. 147. I agree with the majority that appellant's assertion, like most testimony by witnesses who are parties, is likely to be self-serving and that the self-serving nature of the testimony goes to his credibility. However, I disagree with the majority that appellant's testimony stands alone in the record. The majority's analysis incorrectly overlooks two intercon-

---

[30] Without professional advice appellant would not know, e.g., whether the items were seized pursuant to a valid warrant, whether the items could be admitted at trial or were subject to foundational or other objections, whether, if the items were not themselves contraband, they could nevertheless incriminate appellant, etc.

154

nected but equally critical items in the record that together establish a reasonable probability that appellant would have accepted the State's plea offer had he known the home-search evidence would be used against him at trial. That critical evidence consists of (1) the significant disparity that existed between the terms of the State's offer (probation for a term of years plus a fine) and the mandatory ten-year minimum sentence, with the potential for an even harsher sentence, that appellant faced upon conviction and (2) the quantitative and qualitative difference between the traffic-stop evidence, on which appellant based his initial rejection of the plea, and the evidence derived from the search of appellant's home.

Because appellant was offered but then rejected the State's no-jail-time plea, the significant disparity between the plea terms and mandatory minimum sentence appellant faced is not compelling in and of itself. Compare, e.g., *Cullen v. United States*, supra, 194 F3d at 407-408. But that rejection was based on appellant's uninformed understanding that only the evidence seized during the traffic stop would be used against him at trial. As noted earlier, that evidence was either not visible in the van or did not appear to be contraband. *Cleveland v. State*, supra, 290 Ga. App. at 838. Given the access others had to the van, its primary use by another and the nature and location of the evidence seized, appellant's rejection of the State's plea offer was not unreasonable. However, the situation changes completely when the incriminating evidence derived from the search of appellant's home is factored into the equation. That evidence — the bottle of pure distilled ephedrine found in the kitchen refrigerator, the smoking devices located in the office and bedroom, the meth-manufacturing items found in the burn pile, the surveillance cameras and monitoring devices discovered throughout the property — could not be explained away like the van-search evidence. It was visible; it was pervasive; it was, quite simply, overwhelming evidence of guilt. When that evidence is taken into consideration, no competent attorney would consider advising a client to reject a probation-only plea deal when a mandatory, ten-year minimum sentence was the near-certain outcome of trying the case to a jury.

In the context of guilty pleas, the prejudice prong of the *Strickland v. Washington* test requires only that a defendant establish a reasonable probability that counsel's constitutionally ineffective performance affected the outcome of the plea process. See generally *Hill v. Lockhart*, 474 U. S. 52, 58-59 (106 SC 366, 88 LE2d 203) (1985). "'"A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (Cit.)' [Cit.]" *Upton v. Parks*, 284 Ga. 254, 255 (664 SE2d 196) (2008). In this case, because of counsel's ineffective performance, appellant did not know the

incriminating home-search evidence could be used against him when he decided to reject the State's plea deal. Because of counsel's ineffective performance, appellant was deprived of any possible opportunity to accept or renegotiate the plea after he finally did learn the legal significance of that evidence. Appellant asserts he would have accepted the no-jail-time plea offer had he known the true nature of the State's case against him. Under the circumstances in this case, I would find that appellant carried his burden and established a reasonable probability that he would have accepted the State's offer and pled guilty rather than proceed to trial. Because the majority's contrary conclusion under these facts effectively obliterates the "reasonable probability" standard and imposes in its stead a standard in which a defendant like appellant can prevail only by proving prejudice to a certainty, I must respectfully dissent.

DECIDED MARCH 9, 2009.

*James D. Lamb*, for appellant.
*J. Gray Conger, District Attorney, William D. Kelly, Jr., Assistant District Attorney*, for appellee.