**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 28, 2012

# In the Court of Appeals of Georgia

A12A0721. ELROD v. THE STATE.                              DO-027 C

DOYLE, Presiding Judge.

Billy Scott Elrod was convicted of cruelty to a child in the first degree.[1] He appeals, alleging that the trial court erred by overruling his objection to portions of the testimony of one of the State's expert witnesses and by refusing to charge the jury on the lesser included offense of simple battery. He also contends that trial counsel provided ineffective assistance by failing to call an expert witness to rebut the testimony of the State's expert witness. Finding no error, we affirm the judgment of conviction but remand the case to the trial court for a hearing on Elrod's ineffective assistance of counsel claim.

---

[1] OCGA § 16-5-70 (b).

Viewed in favor of the verdict,[2] the record shows that Elrod and his co-defendant, Katherine Scott Barlow, began a romantic relationship in approximately November 2010.[3] Elrod lived on the ground floor of a two-story, single-family residence in Cartersville and rented out most of the top floor, reserving the right to use the bathroom and kitchen on the top floor. . The entire downstairs part of the house featured a cement floor, including Elrod's bedroom, where he kept a crib for his six-month-old son, who would occasionally visit. Barlow lived with her mother a short distance away, but by December, she began spending nights at Elrod's house and introduced Elrod to her children, A. M. and L. M., who were three years old and twenty months old, respectively, on the date of the incident.

On January 18, 2011, Barlow and Elrod put L. M. in the crib for a nap. The mattress for the crib was set at the highest level, which setting allowed L. M. to stand with the crib railing only reaching his chest. Barlow then went upstairs to take a shower, and when she returned approximately 15 minutes later, she found L. M. sitting upright on the couch with Elrod. Elrod claimed that he was in the adjacent

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] Barlow entered a guilty plea to second-degree cruelty to children and is not a party to this appeal.

room when he heard L. M. cry out, and when he went to check on the child, he found L. M. had fallen out of the crib, with his leg lodged in the crib railing and his face on the cement floor. Barlow did not see any noticeable injuries on L. M. at the time, although he indicated that his leg was uncomfortable and seemed less active than usual.

The following morning, L. M. continued to show signs of unusual inactivity, and Barlow first noticed signs of bruising on his face. Barlow gave him Tylenol all day, but did not call the pediatric clinic until that evening, at which time she was advised to take the child to an urgent care facility. Rather than doing so, she took him to the pediatric clinic the following afternoon – January 20 – where Dr. Tammy Williams observed swelling in L. M.'s leg, advised Barlow that his leg might be fractured, instructed her that L. M. needed to go to Scottish Rite Hospital in Atlanta, and suggested that he be transported there in an ambulance. Barlow declined, however, instead choosing to transport L. M. from Elrod's house to her mother's house and pack L. M.'s things.

In the meantime, Dr. Williams reported L. M.'s injuries and need for immediate treatment to the Department of Family and Children's Services ("DFCS"), who in turn sent a representative, Jenna Cliver, to Barlow's mother's house to ensure that L.

3

M. received the necessary care. Cliver followed Barlow, Elrod, and the two children to Scottish Rite Hospital, where L. M. was seen by the doctors, diagnosed with a transverse right tibia fracture, and fitted with a cast.

The following day, Dr. Jordan Greenbaum from the Center for Safe and Healthy Children at Children's Healthcare of Atlanta conducted her own examination of L. M. and observed numerous facial, chest, and abdominal bruises, many of which were inconsistent with normal accidental toddler bruising. Dr. Greenbaum also conducted separate interviews with Barlow and Elrod in order to obtain their recollections of the event, and she noticed several inconsistencies in the details provided by each of them. . In her opinion, Elrod's explanation did not adequately account for the bruises on L. M.'s body or the type of fracture L. M. had sustained to his leg, and she concluded that L. M.'s injuries had resulted from physical abuse. Dr. Greenbaum also noted that her review of L. M.'s x-rays revealed a healing left fibula fracture as well. At trial, Dr. Greenbaum was introduced as an expert witness and testified as to the examinations she performed and the conclusions she reached. She also was asked to consider a hypothetical scenario resembling the version of events provided by Elrod in order to judge the likelihood of L. M.'s accidental injuries in such a scenario.

Elrod was charged with aggravated battery (Count 1) and first degree cruelty to a child (Count 2).[4] Following deliberations, the jury found Elrod not guilty of aggravated battery and guilty of cruelty to a child in the first degree, and the trial court sentenced him to twenty years in prison, to serve ten. This appeal followed.

1. Elrod asserts that the trial court erred by overruling his objection to hypothetical questions posed by the State to Dr. Greenbaum during redirect examination. We disagree.

After L. M. was discharged from the hospital, a DFCS worker went to Elrod's house and took photographs of the crib from which L. M. allegedly fell; the photographs were admitted at trial. Barlow clarified, however, that the mattress in the photographs was on the lowest setting; at the time of L. M.'s injuries, the mattress was set "on the very top level" such that the crib railing came to his chest when he stood in the crib. During re-direct examination of Dr. Greenbaum, the State asked her to "imagine" the placement of L. M.'s foot and ankle through the rail, in the position provided by Elrod in his version of the incident, and the child's face on the concrete floor. Elrod objected on the grounds that Dr. Greenbaum had not viewed the actual

---

[4] The trial court included a charge of second-degree cruelty to children (OCGA § 16-5-70 (c)) as a lesser-included offense of first-degree cruelty to children.

5

scene and that the photographs did not accurately depict the crib at the time of the incident. The trial court overruled the objection, and Dr. Greenbaum went on to testify that in her opinion, the child's injuries were inconsistent with Elrod's version of events.

It is well-settled that "an expert witness may testify about opinions based on facts within . . . her personal knowledge or facts admitted into evidence at trial and presented to the expert in the form of hypothetical questions."[5] And "where an expert bases [her] opinion on facts within the bounds of evidence . . . the testimony is admissible notwithstanding the fact that the expert never went to the scene at all. . . ."[6]

In the instant case, Dr. Greenbaum was asked to consider a scenario based on Elrod's version of the facts and photographs of the crib in order to determine whether L. M.'s injury was consistent with Elrod's story. Because the hypothetical was

---

[5] *Peters v. State*, 268 Ga. 414, 415 (1) (490 SE2d 94) (1997). See also *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 820 (4) (665 SE2d 898) (2008).

[6] *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981).

supported by the evidence, the trial court did not err by allowing Dr. Greenbaum to respond to the hypothetical.[7]

2. Next, Elrod argues that the trial court erred by failing to charge the jury on simple battery as a lesser included offense of first-degree cruelty to a child. We disagree.

"A trial judge never errs in failing to instruct the jury on a [lesser included] offense where there is no written request to so charge."[8] In this case, there are no written requests to charge in the record on appeal. Accordingly, the trial court did not err by failing to charge the jury on simple battery.[9]

Pretermitting Elrod's failure to make a written request, however, the trial court did not err by failing to charge the jury on simple battery because the evidence did not authorize such a charge. "It cannot be found to be error to refuse to charge a lesser included offense if the jury would be unauthorized to return that verdict based on the

---

[7] See *Ga. Dept. of Transp.*, 292 Ga. App. at 820-821 (4).

[8] (Punctuation omitted.) *Gadson v. State*, 264 Ga. 280, 281 (2) (444 SE2d 305) (1994).

[9] See id.

7

evidence."[10] A person commits simple battery by either "[i]ntentionally mak[ing] physical contact of an insulting or provoking nature with the person of another"[11] or "[i]ntentionally caus[ing] physical harm to another."[12] In this case, Elrod did not testify, and his explanation to Barlow and Dr. Greenbaum was that L. M. fell out of the crib. Therefore,

> [e]ven assuming that simple battery as set forth in either subsection (1) or subsection (2) of OCGA § 16-5-23 (a) can be a lesser included offense of cruelty to children in the first degree, it is not in this case because there was simply no evidence to support the offense of simple battery. . . . If the jury believed that an accident occurred, no battery was committed. However, if the jury accepted the State's evidence, then it was authorized to find that [Elrod intentionally] . . . assaulted the child, thereby maliciously causing the child cruel and excessive physical . . . pain. In the circumstances, as here, where the evidence demonstrates commission of the completed offense as charged or that there was no criminal offense committed, the trial court is not required to charge on a lesser included offense.[13]

---

[10] *Moore v. State*, 283 Ga. 151, 154 (2) (656 SE2d 796) (2008).

[11] OCGA § 16-5-23 (a) (1).

[12] OCGA § 16-5-23 (a) (2).

[13] (Citation omitted.) *Moore*, 283 Ga. at 154 (2).

8

3. Finally, Elrod contends that he received ineffective assistance of counsel at trial because counsel failed to call an expert witness. Trial counsel did not file a motion for new trial, but instead filed a notice of appeal on September 7, 2011. Appellate counsel subsequently filed an entry of appearance on October 3, 2011. Thus, this appeal is Elrod's first opportunity to raise an ineffective assistance of trial counsel claim.[14]

"Generally, when the appeal presents the first opportunity to raise an ineffective assistance claim, we remand the case to the trial court for an evidentiary hearing on the issue."[15] In this case, Elrod's argument that he was prejudiced by trial counsel's failure to call an expert cannot be decided as a matter of law based on the existing record.

> Accordingly, we remand this case to the trial court for a hearing and determination on the ineffective assistance claim. If the trial court concludes that trial counsel was ineffective, [Elrod] is entitled to a new trial. On the other hand, if the trial court finds that [Elrod] received

---

[14] See *Williams v. Moody*, 287 Ga. 665, 666 (1) (697 SE2d 199) (2010) ("The pre-appeal opportunity is 'available' when the convicted defendant is no longer represented by the attorney who represented him at trial.")

[15] (Punctuation omitted.) *McMahon v. State*, 308 Ga. App. 292, 295-296 (3) (707 SE2d 528) (2011).

effective assistance, he may appeal the trial court's ruling within 30 days thereafter.[16]

*Judgment affirmed and case remanded with direction. Andrews and Boggs, JJ., concur.*

---

[16] *Bynum v. State*, 300 Ga. App. 163, 168 (7) (684 SE2d 330) (2009).