S05A0594, S05X0595. SCHOFIELD v. GULLEY; and vice versa.

(614 SE2d 740)

CARLEY, Justice.

After a jury trial, William Marvin Gulley was found guilty of the malice murder of Mary Garner, the rape of Curly Bell Swan, three counts of aggravated assault, two counts each of aggravated battery, armed robbery, and kidnapping with bodily injury, and one count each of burglary, theft by taking, possession of a knife during the commission of a crime, and possession of a firearm during the commission of a crime. The trial court merged two of the aggravated assault charges with other counts, and entered judgments of conviction and sentences on the remaining verdicts, including a death sentence for the malice murder as recommended by the jury. This Court affirmed Gulley's convictions and sentences. *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999). In June of 2000, Gulley filed a petition for writ of habeas corpus. In an order filed on October 21, 2004, the habeas court vacated Gulley's death sentence, but let stand all of his convictions. The Warden appeals in Case Number S05A0594, and Gulley cross-appeals in Case Number S05X0595. For the reasons set forth below, we affirm the habeas court's judgments in both the appeal and the cross-appeal.

## I. Alleged Ineffective Assistance in the Sentencing Phase

The Warden contends that the habeas court erroneously found that, in two areas, Gulley's trial counsel rendered ineffective assistance in the sentencing phase. In the cross-appeal, Gulley argues that the habeas court erred by not finding his trial attorneys ineffective in the sentencing phase in several other respects.

In order to prevail on an ineffective assistance claim, a petitioner must demonstrate that trial counsel performed deficiently under constitutional standards and that the deficiency in reasonable probability changed the outcome of the trial. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985). See also *Wiggins v. Smith*, 539 U. S. 510 (123 SC 2527, 156 LE2d 471) (2003) (applying *Strickland v. Washington*, supra). There is a rebuttable presumption that counsel exercised "reasonable professional" judgment, and counsel's decisions are examined in light of the circumstances existing at the time of trial rather than in hindsight. *Strickland v. Washington*, supra at 689-690 (III) (A). On appeal, "we accept the habeas court's findings of fact unless clearly erroneous but independently apply those facts to the law." *Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001).

Gulley was originally represented by Billy C. Mathis, Jr., and Craig S. Mathis. However, those original attorneys were permitted to withdraw from representing Gulley in February of 1996. In April of that year, Thomas G. Ledford, John L. Tracy III, and Mark T. Phillips began representing Gulley, with Ledford serving as lead counsel. The habeas court found that this second set of attorneys rendered ineffective assistance in the sentencing phase.

A. The habeas court found that Gulley's trial counsel performed deficiently with regard to the claim that Gulley had saved two persons' lives in August of 1992. One of the exhibits is a memorandum from Pamela Leonard, a mitigation specialist in the Multi-County Public Defender's Office, to Gulley's original attorneys. According to that memorandum, Gulley claimed that he had saved three persons' lives, one being a coworker at a Ritz-Carlton hotel, a second being a woman who had attempted to jump out of a window at Grady Hospital, and a third about whom Ms. Leonard "forgot to ask." The memorandum misidentified Gulley's coworker as "Dan Connor."

At some point, Gulley's new defense counsel became aware of an Atlanta Journal-Constitution article reporting on a "Bill Gulley" who saved the lives of two persons in three days. The article was known to new counsel at least by the time Ledford transmitted to Ms. Leonard a facsimile, dated September 3, 1997, which read as follows: "Pam, Mr. Gulley allegedly saved two lives per newspaper article. Please investigate. Mr. George Waldrop, our investigator[,] will be contacting you." Phillips, who was assigned to prepare mitigation evidence, testified in the habeas court that Waldrop and Ms. Leonard did not succeed in locating the two persons whom Gulley reportedly saved, adding, "But I don't know if they tried." Phillips also testified that Waldrop "didn't do a whole lot of anything," that the investigators were generally not given "very much direction" by the attorneys, and that the sharing of information among the attorneys was "very disorganized" and "no better than gossip." The testimony of Ledford and Tracy reveals that they were focused almost exclusively on guilt/innocence issues, and sheds no light on what investigation into the reported lifesaving incidents was actually done. Ledford testified that he originally believed that a death sentence was unlikely, but that his belief was shaken on January 13, 1998, when the district attorney served notice of a Fulton County double murder which Gulley allegedly committed a week before the Dougherty County crimes for which he was indicted in this case. Ledford further testified as follows: "I knew then that we had not prepared for mitigation and that we had no time to do it." Therefore, it appears that none of Gulley's attorneys took responsibility to ensure that the reports of his saving two lives were properly investigated.

In contrast to defense counsel's preparation for trial, habeas counsel pursued several fairly obvious avenues of investigation which proved fruitful. One of Gulley's half-brothers, Waldell Thomas, was located and gave an affidavit indicating that he had worked with Gulley at the Ritz-Carlton hotel in Buckhead and heard reports that Gulley saved a coworker named "Dan" and a woman in Grady Hospital. The Warden argues correctly that the lawyers for the defense in a death penalty case are not automatically deficient when they decide not to interview all of a defendant's family members and when they reasonably rely on information provided by the defendant. In this case, however, there is not anything in the record to suggest that the failure of Gulley's trial attorneys to interview his half-brother resulted from anything other than neglect. Habeas counsel also obtained an affidavit from Dan O'Connor stating that he had worked at the Ritz-Carlton hotel, that Gulley saved him when he was accidentally electrocuted at work, and that he was aware that his brother assisted Gulley in saving a woman at Grady Hospital who attempted to jump out of a window. Habeas counsel then obtained testimony from Dan O'Connor's brother, Richard O'Connor, that he assisted Gulley in saving a woman from throwing herself out of a window. Finally, habeas counsel procured a Grady Hospital record of Gulley's treatment for a "deep scratch" sustained the day before the newspaper article was published. The article reported that the "Bill Gulley" who saved two lives was "cut slightly" at the hospital while struggling with the woman attempting suicide. This report would have led reasonable counsel to inquire of the hospital, or at least Gulley himself, whether he received treatment. According to the medical record, Gulley stated that his injury was sustained while "pulling a lady back in a window" who was "trying to jump." Pretermitting whether this statement would have been admissible as one made for medical diagnosis or treatment pursuant to OCGA § 24-3-4 or as hearsay which is sufficiently reliable to be admitted in the sentencing phase in contravention of the general rules of evidence, we note that the medical record at the very least showed that Gulley was present at the hospital and was injured. Thus, that record corroborated Richard O'Connor's testimony and supported trial counsel's argument that the newspaper article itself should have been admitted in the sentencing phase as sufficiently reliable hearsay. See *Gissendaner v. State*, 272 Ga. 704, 714-715 (12) (532 SE2d 677) (2000) (discussing the procedure for the admission of reliable hearsay in the sentencing phase); *Howard v. State*, 261 Ga. 251 (403 SE2d 204) (1991) (holding that a patient's hearsay declaration in a medical record was inadmissible under OCGA § 24-3-4 because it was not "reasonably pertinent" to the declarant's diagnosis and treatment).

The habeas court concluded that, had trial counsel prepared and presented evidence that Gulley saved the lives of Dan O'Connor and the woman who attempted suicide, there would have been a reasonable probability of a different sentencing verdict. The State points out that Gulley's trial attorneys succeeded in eliciting testimony from the defense psychologist regarding Gulley's claim that he saved two lives. However, this testimony would likely have led the jury to conclude, at best, that Gulley was being grandiose as a result of his mental state or, at worst, that he was simply lying. Certainly, the crimes of which Gulley has been convicted were extremely heinous, and the jury would have been authorized to impose a death sentence even if evidence of his saving two lives had been presented at trial. However, Gulley's burden is to show only "a reasonable probability" of a different outcome, not that a different outcome would have been certain or even "more likely than not." *Strickland v. Washington,* supra at 693 (III) (B). Whatever our own opinions may be about the sentencing verdict in this case, the habeas court correctly determined that there is a reasonable probability that evidence of Gulley's having saved two persons' lives, at risk to his own life, would have changed that sentencing verdict.

B. Because we have concluded that trial counsel's deficiencies with regard to Gulley's having saved two persons' lives created enough actual prejudice to require a new sentencing trial, we need not address the Warden's contention that the habeas court erred in finding Gulley's lawyers ineffective during the sentencing phase in their cross-examination of the detective who testified about the Fulton County murders. We also need not address Gulley's contention, in his cross-appeal, that the habeas court erred by not finding counsel ineffective in other areas relevant only to the sentencing phase.

## II. Alleged Ineffective Assistance During Plea Bargaining

During the pre-trial period, the State offered Gulley a sentence of life imprisonment without parole in exchange for a guilty plea, but that offer was to expire automatically on a set date. Gulley argues that his trial attorneys rendered ineffective assistance by not adequately impressing upon him the risk of a death sentence if he refused the State's offer. The habeas record does not include any direct evidence about the actual substance of counsel's discussions with Gulley during the period when the plea offer was still pending. Gulley has also failed to demonstrate how his lawyers should have conducted themselves, or how he would have reacted, at the time the plea offer was about to expire if counsel had been aware of the Fulton County murders, but had reason to believe that the district attorney

was not aware of those alleged crimes. Based on the record before us, we find no error in the habeas court's conclusion that Gulley failed to prove his attorneys' ineffective assistance with regard to plea bargaining. See *Strickland v. Washington*, supra; *Smith v. Francis*, supra at 783-784 (1).

## III. Remaining Claims

Gulley contends that the State withheld evidence and presented misleading testimony regarding the voluntariness of his pre-trial custodial statement, that the prosecutor presented misleading testimony regarding other, unspecified issues involved in the guilt/innocence phase, that the State presented misleading testimony from the surviving rape victim, and that the trial court erred by failing to make adequate inquiry into Gulley's alleged dissatisfaction with trial counsel. Pretermitting whether Gulley has abandoned these claims by the cursory manner in which they have been presented on appeal, the habeas court did not err. But see *Head v. Hill*, 277 Ga. 255, 269 (VI) (A) (587 SE2d 613) (2003) (finding habeas claims abandoned under Supreme Court Rule 22). These claims are all barred by procedural default because they were not raised on direct appeal, and Gulley has failed to show sufficient cause or prejudice to overcome that bar, or his counsel's ineffective assistance for failing to raise the claims earlier. *Head v. Hill*, supra at 264-265 (IV) (applying procedural default rules and the standards for ineffective assistance claims to various claims raised "in summary fashion"). Because we affirm the vacation of Gulley's death sentence, all of his other remaining claims are moot.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 6, 2005.

*Kenneth B. Hodges III, District Attorney, Thurbert E. Baker, Attorney General, Patricia B. Attaway Burton, Assistant Attorney General*, for appellant.

*Brian S. Kammer*, for appellee.