S10G0617. JOHNSON v. THE STATE.

(712 SE2d 811)

CARLEY, Presiding Justice.

Jessie James Johnson was indicted on June 24, 2003 for armed robbery, aggravated assault and two counts of burglary. Derrell Dowdell, an attorney with the public defender's office, was the first lawyer assigned to Johnson's case. At some point, the State communicated a plea offer for Johnson to serve 25 years to Investigator Chris Lindsay of the public defender's office, who was assigned to Johnson's case. Lindsay relayed the offer to Johnson. On July 1, 2003, Mark Casto, also an attorney with the public defender's office, was assigned to Johnson's case as a replacement for Dowdell, who informed Casto of the State's offer and of Johnson's desire to plead not guilty and go to trial.

Due to ongoing health problems, Casto was not present at the docket call on August 1, 2003, but another attorney from the public defender's office, Jim Messner, entered a not guilty plea on Johnson's behalf. Casto first met with Johnson on August 4, 2003, during which Johnson gave Casto the names of two alibi witnesses. After the meeting, Casto investigated the alibi witnesses, but could not locate one of them, and the other witness, Johnson's sister, would not support an alibi defense. During a meeting two days before trial, on August 12, Casto reported to Johnson that he would be unable to present favorable testimony from the alibi witnesses. Casto then brought up the State's plea offer and informed Johnson that due to his prior record, he would face a mandatory sentence of life without possibility of parole if he was convicted on the armed robbery count. There is no evidence in the record that Johnson had been advised of this mandatory sentence prior to this time. Johnson asked Casto to propose a counteroffer of twenty years to serve ten, and Casto immediately telephoned Michele Ivey, the Assistant District Attorney handling the case, who rejected the counteroffer. About five minutes later, Casto again called Ms. Ivey and informed her that Johnson wanted to accept the original offer. However, Ms. Ivey stated that the original offer was withdrawn due to a standing policy of the District Attorney's Office that plea offers are held open only until the docket call, meaning that once a defendant pleads not guilty, the plea offer is considered rejected. Johnson was subsequently tried, convicted, and sentenced to life without parole.

Johnson filed a motion for new trial on September 10, 2003, contending that his trial counsel rendered ineffective assistance by failing to advise him that if he rejected the State's plea offer, he would face a mandatory sentence of life without parole if convicted on the armed robbery count. The trial court denied the motion for new trial, and the Court of Appeals affirmed. *Johnson v. State*, 301 Ga. App. 423 (687 SE2d 663) (2009). The Court of Appeals pretermitted whether Johnson's counsel rendered deficient performance, holding that Johnson failed to show prejudice because there was no reasonable probability that he would have accepted the original plea offer had counsel timely informed him that he was facing a mandatory sentence of life without parole. *Johnson v. State*, supra at 426. We granted certiorari to consider that ruling.

Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[t]o prevail on a claim of ineffective assistance of trial counsel, [Johnson] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. [Cit.]" *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). "There is a rebuttable presumption that counsel exercised 'reasonable professional' judgment, and counsel's decisions are examined in

light of the circumstances existing at the time of trial rather than in hindsight. [Cit.]" *Schofield v. Gulley*, 279 Ga. 413 (I) (614 SE2d 740) (2005). When reviewing an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cits.]" *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

In *Lloyd v. State*, 258 Ga. 645, 648 (2) (a) (373 SE2d 1) (1988), this Court held that trial counsel has rendered "less than reasonably professional assistance" if he has not informed his client "that an offer to plead guilty has been made and . . . advised [his client] of the consequences of the choices confronting him." Furthermore, we have recognized that

> "(p)rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." [Cit.] The plea bargaining process is a critical stage of criminal proceedings where an attorney's involvement is crucial. . . . [Cit.] "Indeed, with plea bargaining the norm and trial the exception, for most criminal defendants (the plea process) is *the* critical stage of their prosecution." [Cit.] (Emphasis in original.)

*Cleveland v. State*, 285 Ga. 142, 144 (674 SE2d 289) (2009).

In the present case, it is clear that Johnson was not reasonably represented by any attorney during the plea bargaining process. Although there is a dispute as to whether Johnson was informed of the plea offer before the August 12 meeting with Casto, even if he was informed, it is apparent that no one from the public defender's office went to the State on Johnson's behalf to negotiate a plea deal prior to the entry of a not guilty plea at the docket call. Furthermore, defense counsel, prior to the expiration of the plea offer, made no "independent examination of the facts" in Johnson's case nor tried to contact the alleged alibi witnesses so that he could " 'offer his informed opinion as to what plea should be entered.' " *Cleveland v. State*, supra. Finally, trial counsel failed to inform Johnson prior to his rejection of the State's plea offer that he was facing a mandatory sentence of life without parole if convicted at trial. " 'If the accused's choice on the question of a guilty plea is to be an informed one, he must act with full awareness of his alternatives. . . .' " *Lloyd v. State*, supra at 647 (2) (a). Therefore, without knowledge of the alternative of a mandatory life sentence if convicted at trial and without knowledge of the other information described above, Johnson "could

not make an informed decision about whether to accept or reject the State's plea offer [and thus he] has fulfilled his burden of showing that his 'counsel's representation fell below an objective standard of reasonableness.' [Cit.]" *Cleveland v. State*, 290 Ga. App. 835, 839 (2) (660 SE2d 777) (2008) (holding that trial counsel was deficient in failing to inform his client of all the evidence in the State's case against him), aff'd, 285 Ga., supra at 142.

Moreover, the record also shows that Casto did not meet with Johnson until after the docket call and thus after the expiration of the plea offer, even though Casto, who had recently worked for the District Attorney's Office, admitted that he was aware of the Office's policy on plea offer deadlines. His "failure to promptly inform [Johnson] of the imminent expiration of [the] plea offer effectively deprive[d] [him] of a 'last chance' opportunity to avoid a potential sentence of much greater length than the term of the offer," further demonstrating that Johnson received deficient counsel during the plea bargain process. *Turner v. State*, 49 SW3d 461, 465 (III) (B) (Tex. App. 2001). See also *United States v. Allen*, 53 Fed. Appx. 367, 374 (IV) (C) (6th Cir. 2002).

Although we have determined that trial counsel was deficient, Johnson also has the burden of establishing that he was prejudiced by trial counsel's deficiencies. In the context of the plea bargain process, the defendant must demonstrate "that, but for counsel's deficient performance, there is a reasonable probability that he would have accepted the State's plea offer. [Cit.]" *Cleveland v. State*, 285 Ga., supra at 145. The requisite reasonable probability standard demands a showing that "there [is] 'some indication that the defendant was amenable to the offer made by the state.' [Cit.]" *Cleveland v. State*, 285 Ga., supra at 145-146.

In the present case, it is undisputed that once Johnson was advised that he faced a mandatory life sentence if convicted at trial and that his alibi witnesses would not testify in his defense, he immediately asked his counsel to begin negotiating for a plea offer by attempting to see if the State would agree to a lower sentence. " 'This fact itself rebuts the . . . argument that [Johnson's] publicly and privately professed belief in his innocence would have prevented a plea.' " *Turner v. State of Tenn.*, 858 F2d 1201, 1206 (IV) (6th Cir. 1988), vacated on other grounds, 492 U. S. 902 (109 SC 3208, 106 LE2d 559) (1989). Moreover, upon his counteroffer being summarily rejected, Johnson, within five minutes, tried to accept the original offer but was informed that the original offer had expired. Therefore, the record shows a reasonable probability that Johnson would have accepted the State's plea offer in the absence of his counsel's deficiencies due to the fact that Johnson actually did accept the plea offer once he was advised by his counsel and informed of all the

relevant information. In short, if trial counsel, before the expiration of the State's plea offer, had investigated the facts of the case, informed Johnson that his alibi witnesses would not testify, advised Johnson that he faced a mandatory sentence of life without parole if convicted at trial, and proffered his own informed opinion as to whether Johnson should accept or reject the plea offer, it is quite evident that Johnson not only would have been amenable to the State's plea offer but actually would have accepted it.

Therefore, as Johnson has shown both that his trial counsel was deficient and that he was prejudiced by these deficiencies, he has carried his burden of proving ineffective assistance of counsel. Thus, the judgment of the Court of Appeals is reversed, with direction that the case be remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. All the Justices concur, except Hines and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

Because evidence supports the trial court's conclusion that Johnson failed to prove that there was a reasonable probability that he would have accepted the State's original plea offer but for the alleged deficient performance of his trial counsel, I must respectfully dissent from the majority's erroneous conclusion that the judgment of the trial court should be reversed. Contrary to the majority's conclusion that there is some indication in the record that Johnson was amenable to the State's original plea offer (see Maj. Op. at 536), the record reveals that Johnson's initial impulse, even after being informed of the possibility of serving a life sentence without the possibility of parole if he went to trial, was to *reject* the State's plea offer and to try to get a better deal by making a counteroffer of his own. Thus, all that can be said from the record is that Johnson was prepared to make a *counteroffer* if he had known about the State's original plea deadline and the possibility of serving a life sentence without the possibility of parole if he went to trial. Because the State would have been authorized to revoke its plea offer in light of Johnson's counteroffer, completely independently of any deadline by which the offer would have expired automatically (see, e.g., *Scott v. State*, 302 Ga. App. 111, 114 (3) (690 SE2d 242) (2010)), it cannot be said that Johnson was prejudiced by his *counsel's* failure to inform him sooner of the possible sentence that he would face if he did not accept a plea deal. All that can be said is that the outcome could or would have been the same regardless of the timing in which Johnson rejected the State's original plea offer.

In short, Johnson's decision to make a counteroffer to the State's original plea offer after being informed of the possible

consequences if he went to trial makes all the difference in this case. Indeed, this case might be different if Johnson had immediately accepted the State's post-deadline plea offer without attempting to make any changes to it, and then the State rejected his unequivocal acceptance of the offer based solely on the fact that the original plea deadline (of which Johnson had not been informed) had already passed. However, that is not what happened here. Instead of accepting the State's plea offer, Johnson made a counteroffer, which exposed him to the risk of having the State's plea offer taken off the table. See, e.g., *Scott*, supra. For this reason, I cannot agree with the majority's conclusion that the trial court erred in concluding that Johnson failed to meet his burden of proving ineffective assistance. I would therefore affirm the judgment of the Court of Appeals, and I must respectfully dissent from the majority opinion of this Court.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED JUNE 13, 2011 —
RECONSIDERATION DENIED JULY 11, 2011.

*Garner & Wald, Michael E. Garner, Stephanie N. Wald*, for appellant.

*Julia Fessenden Slater, District Attorney, Michele C. Ivey, Michael E. Craig, William D. Kelly, Jr., Assistant District Attorneys*, for appellee.