## A11A2343. FORRESTER v. THE STATE.
(726 SE2d 476)

ADAMS, Judge.

Karen Allison Forrester appeals after a jury convicted her of three counts of forgery in the first degree and one count of theft by deception. Because we find the evidence insufficient to support Forrester's convictions on the three forgery counts, we reverse as to those charges, but we affirm her conviction on the charge of theft by deception.

In weighing the sufficiency of the evidence, this Court construes the evidence at trial, and all reasonable inferences from it, most strongly in favor of the jury's verdict, and the defendant no longer enjoys a presumption of innocence. *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008). We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. Id.

So viewed, the evidence shows that on or about May 28, 2009, Forrester responded to a sign posted by Rene Rosas and his wife, Myrna Valdez, advertising the rental of a house located at 6201 Caprice Drive in Flowery Branch (the "Rental House"). Valdez showed the Rental House to Forrester that day, and they discussed the leasing terms. The next day Forrester returned to meet with Rosas and Valdez. The parties signed a lease contract prepared by Valdez, which reflected a monthly rent of $850, with a $850 deposit, and Forrester gave Rosas and Valdez three money orders in the amount of $920 each to cover the security deposit, the first month's rent and pre-payment of future rent. A few days later, Forrester called Valdez

to say that she had some extra money and wanted to advance an additional amount for rent. She had a $2,000 check and she wanted to pay Valdez $1,000 of that amount. Rosas and Valdez went with Forrester to the bank, which declined to cash it. Later, Forrester asked Rosas and Valdez to return $560 of the money she had advanced through the money orders, and they wrote her a check for that amount. The money orders were subsequently dishonored as "counterfeit," however, and when Forrester later called to request the return of an additional $500, Rosas and Valdez called the police.

1. Forrester asserts that the evidence was insufficient to support her convictions because the State failed to prove the offenses occurred in Hall County.

> Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. The [S]tate may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence. On appeal, we view the evidence in the light most favorable to the verdict and determine whether the evidence was sufficient to permit a finding that the crime was committed in the county where the defendant was indicted.

(Punctuation omitted.) *Bowen v. State*, 304 Ga. App. 819, 822-823 (1) (b) (697 SE2d 898) (2010).

In charging Forrester with forgery, the indictment alleged that she possessed the counterfeit money orders and delivered them to Rosas, and the State was required to prove that these actions occurred in Hall County. The police officer who responded to the call by Rosas and Valdez testified, without contradiction, that the Rental House was located in Hall County. Valdez testified that she first met Forrester at the Rental House on or around May 28, 2009, and the next day Forrester "returned" to sign the lease and gave them the money orders. Rosas testified about only two meetings with Forrester: the first when he went to the Rental House to sign the lease and the second when they went to the bank a few days later in an attempt to cash the $2,000 check. Rosas said that Forrester gave them the money orders the day she signed the lease, and on that day, he showed her some rooms in the Rental House. We find this evidence

sufficient to establish Hall County as the proper venue for the forgery charges.

The indictment charged that Forrester committed theft by deception when she obtained $560, by "creating Rene Rosas' impression of an existing fact which was false and which the accused knew to be false, to-wit: that the money orders provided by the accused to Rene Rosas were not counterfeit . . . ." "Theft by deception (OCGA § 16-8-3) is considered to have been committed in any county in which the accused exercised control over the property which was the subject of the theft. OCGA § 16-8-11." *Arnold v. State*, 210 Ga. App. 843, 847 (1) (b) (437 SE2d 844) (1993). Valdez testified that, at Forrester's request, she placed the $560 check in the mailbox at the Rental House where she saw Forrester driving by like she was "waiting for me to drop it off." This occurred the same day that Forrester cashed the check. We find this evidence sufficient to establish venue in Hall County for the theft by deception charge. Id. (venue established where evidence showed that defendant's agent obtained check for defendant in county where defendant charged).

2. Forrester also argues that the evidence was insufficient to support her forgery convictions because the State failed to prove that she lacked the authority to possess or utter the three money orders.[1] We agree.

OCGA § 16-9-1 (a) provides in pertinent part:

A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes . . . any writing in . . . such manner that the writing as made . . . purports to have been made . . . by authority of one who did not give such authority and utters or delivers such writing.

And each forgery count of the indictment charged that Forrester "did with intent to defraud knowingly possess a writing, to-wit: counterfeit Money Gram money order . . . in such a manner that the writing as made purports to have been made by the authority of one who did not give such authority and did deliver said writing to Rene Rosas in violation of OCGA § 16-9-1. . . ." Thus, the State contended that Forrester lacked authority from Money Gram to possess and deliver the money orders because they were counterfeit. But the only evidence introduced at trial to demonstrate that the money orders were

---

[1] Forrester does not contest the sufficiency of the evidence to support her conviction for theft by deception, other than as to venue, which we addressed in Division 1 above. Accordingly, we expressly do not address the arguments raised in Division 2 as they pertain to the theft by deception charge.

counterfeit were copies of the processed orders themselves, each bearing a stamp reading, "Payment Stopped Counterfeit," which the State proffered under the business records exception to the hearsay rule, OCGA § 24-3-14 (b).[2]

Although Forrester asserts that the State failed to lay the proper foundation for admitting the money orders into evidence under this exception, her principal argument is that the stamp on each money order did not qualify as a business record because it reflects a conclusion by a third party that the money orders were counterfeit. Forrester further argues that the admission of these documents as proof that the money orders were counterfeit violated the Confrontation Clause.

To lay a foundation for the admission of the money orders, the State presented the testimony of Jean Rene Tchocksi, a branch manager at Bank of America. Tchocksi explained that after a negotiable instrument such as a check or money order is deposited into a customer's Bank of America account in Georgia, the instrument is transferred to the bank's proof department in College Park. The proof department, in turn, transmits the instrument electronically to the originating financial institution for a determination of whether the funds are valid. If the instrument clears, the financial institution verifies a return receipt and sends the deposited funds to Bank of America. But if the instrument is not approved, the proof department is notified and that department returns a copy of the instrument directly to the customer who deposited the money order (not to the branch where the deposit was made). When the instrument is returned to the customer, it typically shows the reason for the return, such as insufficient funds, stop payment, account closure or counterfeitness. The copy also is marked "legal tender," which means that the copy of the instrument is legally the same as the original because the originals may no longer be available.[3] Tchocksi said that Bank of

---

[2] Subsection (b) of OCGA § 24-3-14 reads, in pertinent part:

Any writing . . . made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

[3] As previously explained in *Ross v. State*, 298 Ga. App. 525, 526, n. 3 (680 SE2d 435) (2009), [p]ursuant to the federal "Check 21 Act," any bank at any point in the check clearing process may truncate or remove the original paper check from the check clearing process and instead transmit an electronic image of the check through the process. When necessary, a bank may create a substitute check which, among other requirements, must be a paper reproduction of the original check that contains an image of the front and the back of the original paper check and which is the legal

America relies upon such copies in the usual course of its business.

Pretermitting whether this testimony was sufficient to lay a foundation generally for the admission of the three money orders under the business records exception,[4] it is well settled that "[t]hose portions of business records which contain conclusions, opinions, estimates and impressions of third parties who are not before the court are not admissible under the business records exception to the hearsay rule." (Citations and punctuation omitted.) *Malcolm v. State*, 263 Ga. 369, 370 (3) (434 SE2d 479) (1993). Here, Tchocksi's testimony indicates that the determination that the money orders delivered by Forrester were counterfeit was a conclusion made by a third party institution, whose representatives did not testify at trial.[5] Thus, we agree with Forrester that the "counterfeit" stamps should not have been admissible as a business record to show that the documents were, in fact, counterfeit. See *Miller v. State*, 266 Ga. 850, 854 (3) (472 SE2d 74) (1996); *Kesler v. State*, 249 Ga. 462, 474 (11) (291 SE2d 497) (1982). Compare *Ross v. State*, 298 Ga. App. 525 (680 SE2d 435) (2009) (affirming admission of copies of processed checks as a business record where defendant raised only foundational arguments and did not contend that the "NSF" stamp on a check represented a conclusion or violated the confrontation clause).

Moreover, as Forrester notes, "the use of hearsay testimony to support a criminal conviction is bounded by the substantive limits of the confrontation clause." (Citation and punctuation omitted.) *Miller v. State*, 266 Ga. at 853 (2). " 'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' *Maryland v. Craig*, 497 U. S. 836, 845 (110 SC 3157, 111 LE2d 666) (1990)." Id. To allow the admission of the stamp on the money orders as proof that they were indeed counterfeit would deprive Forrester of her right to conduct a thorough and sifting cross-examination on that determination.

---

equivalent of the original check so long as it accurately represents all of the information on the front and back of the original check at the time of truncation. Andrea McGlinn, "Check Clearing for the 21st Century Act: The Impact on Consumers," 9 N.C. Banking Inst. 179 (April 2005).

[4] See id. at 527 (affirming trial court's admission of certified copy of returned check showing insufficient funds under business record exception where branch manager of depository bank testified that the bank received, relied upon and retained the checks in the regular course of its business, but representatives of originating institutions did not testify).

[5] Moreover, we note that no specific evidence was even presented as to who applied the "counterfeit" stamp to the copy of the money orders and thus no adequate foundation laid as to the stamp's admissibility as a business record.

Allowing the admission of such evidence would also relieve the State of its burden of proving that Forrester lacked the authority to possess and deliver the money orders, instead impermissibly shifting the burden to her to prove the money orders were not counterfeit, a burden she would have to undertake without full knowledge of the evidence against her. For example, the State presented no evidence showing how the determination of counterfeitness was made or identifying the factors that the institution relied upon in making that determination.[6] See id. at 856 (7).

Because the trial court erred in admitting the "counterfeit" stamps on the money orders as business records and the State failed to present any other evidence to establish that the money orders were counterfeit, the State failed to prove Forrester lacked the authority to possess and deliver the money orders as required to support her convictions under OCGA § 16-9-1 (a). Accordingly, we reverse those convictions.

3. Forrester further contends that the trial court erred in allowing a signed statement to go out with the jury during their deliberations over her objection based upon the continuing witness rule.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations. These documents, which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible.

(Citations and punctuation omitted.) *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009).

The "signed statement" at issue is an "Acknowledgment of Receipt of Demand for Possession," which Forrester signed before a

---

[6] The impermissibility of such a burden is evident in a case such as this, where the originals of the money orders may have been removed during processing, allowing Forrester access only to copies that may not be subject to a thorough, independent examination.

notary. That document reads, in pertinent part:

> I, Karen Forrester, hereby declare that I received a demand
> for possession dated June 10, 2009, stating that I leave the
> premises for failure to pay rent past due and making bad
> faith payments of fraudulent money orders.

Forrester contends that this statement was essentially a "signed confession." We disagree.

The statement is, as it purports to be, simply an acknowledgment that she received a demand for possession with a description of what that demand states, i.e., that she must leave the premises for failure to pay rent and making bad faith payments with fraudulent money orders. Thus, by signing the document, Forrester acknowledged her receipt of the demand containing the reasons Rosas and Valdez gave for evicting her. These reasons were consistent with testimony from Rosas and Valdez at trial as to why she was evicted. The acknowledgment does not purport to be, and is not, an admission that she actually committed the acts described.

We conclude, therefore, that the acknowledgment is original documentary evidence, not written testimony, because the document did not derive its evidentiary value solely from the credibility of its maker. Accordingly, the trial court did not err in allowing it to go out with the jury. *Davis v. State*, 285 Ga. at 348 (8).

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. Blackwell, J., concurs in Divisions 1 and 3 and in the judgment.*

DECIDED MARCH 19, 2012.

*Travis A. Williams, H. Bradford Morris, Jr.*, for appellant.
*Lee Darragh, District Attorney, Randall C. Schonder, Assistant District Attorney*, for appellee.