## S12A1552. BROWN v. THE STATE.
(734 SE2d 23)

HINES, Justice.

Following the denial of his motion for new trial, as amended, Christopher Brown appeals his convictions for malice murder and armed robbery in connection with the fatal shooting of Robert Lovelace. Brown challenges the sufficiency of the evidence of his guilt, the admission of certain evidence at trial, and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. In 2008, Lovelace, a car salesman, was having serious financial difficulties, including massive debt and the impending foreclosures of real property, and he devised a plan to liquidate his 401(k) and use the proceeds to purchase a large quantity of cocaine, which he planned to sell for profit. A check for the 401(k) proceeds in the amount of $21,346.91 was issued to Lovelace. Through his friend and customer, Charles Dixon, Lovelace was introduced to Brown, who was known by the nickname "Show." Brown arranged to purchase a kilogram of cocaine for Lovelace for between $18,000 and $19,500, and Brown expected to receive a car in exchange for brokering the drug deal. The purchase price of the drugs increased, and the deal

---

[1] The crimes occurred on August 27, 2008. On March 18, 2009, a Gwinnett County grand jury returned an indictment charging Brown with Count 1 – the malice murder of Lovelace; Count 2 – the felony murder of Lovelace while in the commission of armed robbery; Count 3 – the felony murder of Lovelace while in the commission of aggravated assault; Count 4 – the armed robbery of Lovelace; and Count 5 – the aggravated assault of Lovelace. Brown was tried before a jury March 15-19, 2010, and found guilty of all charges. A final disposition was signed on March 22, 2010, and filed on March 24, 2010, and an amended final disposition was signed on April 1, 2010 and filed with the clerk of the trial court on April 2, 2010. By that amended final disposition, Brown was sentenced to life in prison on Count 1 and a consecutive term of life in prison on Count 4; Counts 2 and 3 stood vacated by operation of law and Count 5 was found to be merged with Count 1 for the purpose of sentencing. A motion for new trial was filed on March 23, 2010, amended on March 2, 2012, and denied on March 6, 2012. A notice of appeal was filed on March 13, 2012, and the case was docketed in this Court in the September 2012 term. The appeal was submitted for decision on the briefs.

began to fall through. Lovelace was fatally shot at a Holiday Inn Express in Gwinnett County on August 27, 2008.

Cell phone records indicated that both Brown and Lovelace were in Gwinnett County on the day of the shooting; the two were supposed to meet to discuss the drug deal. On August 27, Brown met his girlfriend, Charlotte McDaniel, at a restaurant. When he arrived, he borrowed McDaniel's vehicle, a white Jaguar, and left the restaurant. He returned to the restaurant 20 to 30 minutes later only to leave again almost immediately. Brown explained that he had to leave because "something came up." Phone records showed that, during his 20 to 30 minute absence, Brown was in contact with Lovelace and was in the immediate vicinity of the Holiday Inn Express near Highway 78. Several witnesses who were near the hotel at the relevant time testified to seeing three dark-skinned males arguing and to hearing gunshots. One witness saw a white Jaguar flee the scene, after which the witness walked to the parking lot where he found Lovelace lying on the ground. Also, one of the men who ultimately fled the scene in the Jaguar returned to the front of the car to pick up what appeared to be a plastic grocery bag from the ground near where Lovelace was lying. When law enforcement officers arrived on the scene, Lovelace stated "I've been shot, two black guys, white four-door Jaguar, nine millimeter"; Lovelace also related a license tag number, which phonetically resembled McDaniel's license tag. Lovelace told the responding emergency medical personnel that they should just "let him die." The money that Lovelace cashed out from his retirement account was never recovered or located. Lovelace died at the hospital as a result of multiple gunshot wounds.

Telephone records showed that Brown, Lovelace, and Dixon were in contact with each other during the time preceding the shooting. The records also indicated that Brown's phone was located in the coverage area that includes the Holiday Inn Express near the time of the shooting. Law enforcement recovered a handwritten note from Lovelace's apartment that bore Brown's nickname, "Show," Brown's telephone number, and the names of two streets near the hotel. Investigators discovered that the check Lovelace had received in exchange for withdrawal of the money from his 401(k) was cashed by him two weeks before the murder. On the day of the shooting Brown told Dixon "We had to do what we had to do" and that "Robbie bucked . . . and [we] started shooting."

1. Brown contends that the verdict of guilt for malice murder was not supported by the evidence at trial and actually contradicts "credible" evidence that he was not involved in the shooting. He also maintains that there was no evidence that there was any money taken from or attempted to be taken from Lovelace, and therefore,

that the trial court erred by failing to grant a directed verdict of acquittal on the armed robbery charge. But, the contentions of insufficiency are unavailing.

It is the role of the jury and not this Court to resolve conflicts in the evidence at trial and to make determinations about the credibility of witnesses. *Whitaker v. State*, 291 Ga. 139, 140 (1) (728 SE2d 209) (2012). Rather, the appellate court is to review the evidence cast in the light most favorable to the verdict or verdicts, deferring to the jury's determinations on the proper weight and credibility to be given the evidence. *Farris v. State*, 290 Ga. 323, 324 (1) (720 SE2d 604) (2012). And, merely because the jury resolves any conflicts in the evidence adversely to the defendant does not render the evidence of the defendant's guilt insufficient as a matter of law. *Whitaker v. State*, supra at 140 (1).

As noted in regard to the malice murder charge, multiple witnesses saw an individual matching Brown's description in an argument prior to hearing multiple gunshots; Brown admitted to Dixon that he shot the victim; phone records show that Brown and the victim were communicating prior to the shooting and that Brown was in the vicinity of the hotel during that time; Brown was acting as a middle man for the victim's drug deal gone bad; a note found in the victim's apartment bore Brown's name; and the same kind of car owned by Brown's girlfriend and borrowed by Brown shortly before the shooting was seen fleeing the scene of the crimes.

As for the denial of Brown's motion for a directed verdict of acquittal on the count charging him with armed robbery, this Court in review must apply the same test as it does in assessing a challenge to the sufficiency of the evidence, that is, the test set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Smith v. State*, 290 Ga. 428, 429 (1) (721 SE2d 892) (2012). The offense of armed robbery is committed when a person "with intent to commit theft, . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). The presented evidence and reasonable inferences therefrom showed that gunshots were heard in the area of the shooting; prior to the gunshots, loud male voices were heard and three African-American men were seen engaged in animated conversation before the victim fell by a tree as a result of being shot; the victim died of multiple gunshot wounds; Brown owned a firearm and admitted to another to shooting the victim; the fatal attack occurred after a drug deal which Brown was brokering for the victim went bad; the victim had obtained a large sum of cash to accomplish the drug buy, and became upset when the price of the drugs increased; there was an

arranged encounter between Brown and the victim in furtherance of the drug deal; Brown or one of his cohorts was seen retrieving a plastic grocery bag, which could hold a significant amount of cash, near where the victim lay dying; the victim pleaded to the emergency personnel to "let him die," evidencing despondency, possibly, if not probably, over his situation of losing his life savings; the $21,346.91 in cash obtained by the victim to be used to accomplish the drug deal was never recovered or located.

In order to base a conviction upon circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but have to exclude every other reasonable hypothesis save that of the guilt of the accused. OCGA § 24-4-6. Generally, the question of the reasonableness of a hypothesis is to be determined by the jury which heard the evidence, and when the jury is authorized to find that the evidence, albeit circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law. *Abston v. State*, 291 Ga. 531 (732 SE2d 50) (2012); *Brooks v. State*, 281 Ga. 514, 515-516 (1) (640 SE2d 280) (2007). Certainly, as to the armed robbery, a reasonable hypothesis was that when it appeared that there were problems with the drug deal, i.e., that the victim would not agree to the increased price for the cocaine, Brown decided instead to rob and shoot the victim. Here, the jury, based on the evidence presented, chose to believe the State's theory of the case, as it was authorized to do. The evidence was sufficient to authorize a rational trier of fact to find Brown guilty beyond a reasonable doubt of both the malice murder and armed robbery of Lovelace. *Jackson v. Virginia*, supra.

2. Brown next contends that the trial court erred by admitting, over his objection, Dixon's testimony about statements made by victim Lovelace because the statements lacked sufficient indicia of reliability, and thus, constituted inadmissible hearsay.

At trial, the State asked Dixon whether he had any conversations directly with Lovelace about any deals or meetings with Brown on the day of the crimes or the previous day. Brown made a hearsay objection on the basis that "the proper foundation [had not] been laid," in that there was not a showing of "a significant or sufficient relationship between the deceased and anyone to whom he made a statement." The objection was overruled, and Dixon testified that Lovelace told him about a meeting with Brown and the drug dealers the day before the fatal event and that the meeting had gone badly; Dixon also related that Lovelace told him that he was "going to go meet with Show" on the day of the murder and armed robbery.

In order for non-testimonial hearsay evidence to be admissible under the necessity exception contained in OCGA § 24-3-1 (b),[2] the declarant must be unavailable; the declarant's statement must be relevant to a material fact and more probative as to that fact than other evidence that might be obtained and offered; and the statement has to exhibit particularized guarantees of trustworthiness. *McNaughton v. State*, 290 Ga. 894, 898 (3) (b) (725 SE2d 590) (2012). Brown concedes that the statements were necessary because the declarant, the victim in this case, was deceased at the time of trial. And, they were admittedly relevant to show, inter alia, a planned meeting between Brown and the victim during the time frame of the fatal event. Moreover, there is no showing of other evidence that could have been procured and offered more probative as to that fact than the statements at issue. Nevertheless, Brown maintains that the statements lack sufficient indicia of reliability rendering them inadmissible because Dixon and the victim had a close relationship, and consequently, that Lovelace could not have been concerned that his statements would later be used against him, i.e., that the statements were not against his interest, which would not make them admissible into evidence on that basis. See OCGA § 24-3-8.[3]

In assessing whether an out-of-court statement has sufficient indicia of trustworthiness, this Court looks at the totality of the circumstances; the initial determination as to whether a statement is trustworthy is a matter for the trial court's discretion, the exercise of which will not be overturned absent an abuse of that discretion. *Butler v. State*, 290 Ga. 425, 427 (4) (721 SE2d 889) (2012). As noted, at trial, Brown objected to the statements based on the *lack* of a "significant" relationship between Dixon and Lovelace, but he now bases his challenge to admission of the statements on the admitted existence of a close friendship between Dixon and the victim. Such a close friendship supports a determination of the trustworthiness of the statements. *Gibson v. State*, 290 Ga. 6, 9 (3) (717 SE2d 447) (2011). Other factors also reinforce such a finding, including that the statements were consistent with the victim's plan; the declarant victim did not have a motive to fabricate the statements; and the declarant never recanted or changed his statements. See *Perkins v. State*, 269

---

[2] OCGA § 24-3-1 (b) states:
Hearsay evidence is admitted only in specified cases from necessity.

[3] OCGA § 24-3-8 provides:
Declarations and entries made by a person since deceased against his interest and not made with a view to pending litigation shall be admissible in evidence in any case.

Ga. 791, 796 (4) (505 SE2d 16) (1998); *Chapel v. State*, 270 Ga. 151, 155-156 (4) (510 SE2d 802) (1998).

Under the totality of the circumstances, there was no abuse of the trial court's discretion in permitting Dixon to testify about the victim's statements under the necessity exception to the hearsay rule. *Butler v. State*, supra at 427 (4).

3. Brown next urges that the trial court erred in admitting into evidence over objection the note found in Lovelace's home because no sufficient indicia of reliability existed showing that the deceased actually wrote the note. Further, even if the victim did in fact write the note, it was nonetheless inadmissible hearsay.

The note, which displayed a phone number associated with Brown, Brown's nickname "Show," and an address near the crime scene, reflected the victim's intent to meet Brown at that location. This was consistent with, inter alia, Dixon's testimony about Lovelace's statements to him about his intent to rendezvous with Brown in regard to the troubled drug deal. As the note did not derive its evidentiary value solely from the credibility of its maker, it was admissible as original documentary evidence. See OCGA § 24-3-2;[4] see *Forrester v. State*, 315 Ga. App. 1, 7 (3) (726 SE2d 476) (2012).

Even assuming that the note is subject to a hearsay objection, Brown's argument does not prevail. Whether the note was authored by the victim is an issue relevant to the weight to be given the evidence, not its admissibility, and thus, was an issue for the jury to decide. *Clark v. State*, 283 Ga. App. 884, 887 (2) (642 SE2d 900) (2007). As to satisfying the requirements of admission of the note out of necessity, here again the ostensible declarant victim was deceased; the note was relevant because it showed that the victim knew Brown, had his contact information, and planned to meet him at the hotel where the crimes occurred; the note was arguably more probative than other evidence because, although there was testimony about the victim's general plans to meet with Brown, the note showed the victim planned to meet him at the specific location where he was ultimately robbed and killed; and the note bore indicia of reliability and trustworthiness as it was left on the victim's dresser, indicating that it was a personal reminder rather than a communication to another person.

No abuse of the trial court's discretion has been shown in admitting the note into evidence. See Division 2, supra.

---

[4] OCGA § 24-3-2 provides:
When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence.

4. Finally, Brown maintains that his trial counsel was ineffective because counsel failed to convey and adequately advise him of a plea offer made by the State. Under the controlling *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), in order for Brown to succeed on his claim of the ineffective assistance of trial counsel, he has to show both that trial counsel was deficient and that he was prejudiced by the deficiency. *Cleveland v. State*, 285 Ga. 142, 145 (674 SE2d 289) (2009). See also *Wright v. Van Patten*, 552 U. S. 120 (128 SC 743, 169 LE2d 583) (2008). In that regard, there is the rebuttable presumption that counsel exercised reasonable professional judgment, and counsel's decisions are to be assessed in the context of the circumstances existing at the time of trial rather than in hindsight. *Schofield v. Gulley*, 279 Ga. 413 (I) (614 SE2d 740) (2005). In this Court's review we are to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the legal principles to the facts. *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

In the context of a plea offer, trial counsel can be found to have rendered less than reasonably professional assistance if counsel has not informed his client that such a plea offer has been made and advised the client of the consequences of the choices confronting him. *Johnson v. State*, 289 Ga. 532, 534 (712 SE2d 811) (2011). This is so because prior to trial an accused is entitled to rely upon his counsel to independently examine the facts, circumstances, pleadings and laws involved in the case and then to offer an informed opinion about what plea should be entered; the plea bargaining process is a critical stage of the criminal proceedings, so counsel's involvement is crucial. Id.

While acknowledging that no formal pre-trial plea offer was made in his case, Brown contends that his trial counsel was ineffective "by failing to communicate the State's plea offer of 15 years." See *Missouri v. Frye*, ___ U. S. ___ (132 SC 1399, 182 LE2d 379) (2012) (In general, defense counsel has the duty to communicate formal prosecution offers.) But, the contention is belied by the record of the hearing on Brown's motion for new trial, as amended, at which hearing the only witness testifying was Brown's trial counsel. Counsel testified that early in the prosecution, he went to see the assistant district attorney who would try the case to ask if there was any possibility of "resolving the case for something less than murder and a life sentence," and the response was "no"; after further investigating the case, defense counsel met again with the prosecutor and argued for something less than a life sentence for Brown; the prosecutor listened and said he would think about it but he told defense counsel to go speak with Brown and see if he was willing to "entertain a plea"; the time discussed was about 15 years to serve probably with

some additional probation; defense counsel went to Brown and discussed the possibility with him, but Brown rejected the possibility, stating that he "wanted to take his chance at trial"; while defense counsel did not remember specifically discussing parole eligibility with Brown, it was his usual practice to inform his clients of the parole guidelines for possible convictions; defense counsel gave Brown his opinion that his was a "close case" and counsel did not definitively tell Brown to take the informal offer; Brown questioned defense counsel about the strength of the State's case and then told counsel that he was not interested in the plea offer; and defense counsel did not attempt to convince Brown otherwise.

Thus, the undisputed evidence was that trial counsel thoroughly discussed the informal plea offer with Brown. What is more, although Brown asserts that the prejudice prong of *Strickland v. Washington* is satisfied because "there was a reasonable likelihood that he would have accepted the State's offer," he failed to present any evidence to support this assertion. Indeed, as noted, the record supports the opposite conclusion, in that the only evidence before the court considering the motion for new trial, as amended, suggested that Brown was not interested in further pursuing attempts to resolve his case with a plea bargain and was determined to go to trial.

Simply, Brown has failed to carry his burden under *Strickland v. Washington.*

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 5, 2012.

*Ashleigh B. Merchant,* for appellant.

*Daniel J. Porter, District Attorney, John A. Warr, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General,* for appellee.