296 Ga. 761
FINAL COPY

S14A1373. TAYLOR v. THE STATE.

HINES, Presiding Justice.

Travius Taylor appeals from his convictions and sentences for malice murder and possession of a firearm during the commission of a crime, all in connection with the death of Kasey Cogburn. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Cogburn and Desmick Shivers had a history of selling marijuana together. On October 21, 2008, Shivers asked Cogburn if he knew anyone who wanted to buy some

[1] The crimes were committed on October 22, 2008. On January 30, 2009, a Fulton County grand jury indicted Taylor and LaForrest Rush for malice murder, felony murder while in the commission of the crime of aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, aggravated assault, and possession of a firearm during the commission of a crime; each man was separately charged with possession of a firearm by a convicted felon. Taylor was tried alone before a jury May 15-17, 2012, and found guilty of malice murder, felony murder while in the commission of the crime of aggravated assault, aggravated assault, and possession of a firearm during the commission of a crime; orders of nolle prosequi were entered on the charges of felony murder while in the commission of the crime of possession of a firearm by a convicted felon and possession of a firearm by a convicted felon. On May 18, 2012, Taylor was sentenced to life in prison for the malice murder, and a consecutive term of five years in prison for possession of a firearm during the commission of a crime; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Taylor filed a motion for new trial on May 25, 2012, which he amended on June 26, 2013. On August 27, 2013, the motion, as amended, was denied. Taylor filed a notice of appeal on August 30, 2013, and the appeal was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

marijuana. Cogburn telephoned Taylor, who expressed an interest in so doing. After a first attempt to meet for the sale was forestalled due to law enforcement activity, Cogburn arranged for the parties to meet, and accompanied them to the place where the transaction would occur. After the sale, Cogburn telephoned Olivia Gagne, his fiancée, and told her that he and Taylor were going to another location to get some additional marijuana for Cogburn to sell. Cogburn, Taylor, and Taylor's friend LaForrest Rush went to an apartment that Rush leased. There, Cogburn telephoned Gagne and told her that Taylor believed that Shivers "set him up," thought that he might have had something to do with it, and that Taylor was holding a gun to his head; Cogburn also said that he loved her. Frantic, Gagne placed several calls to Cogburn's cell phone; he eventually answered, told Gagne that he loved her, began to cry, and terminated the telephone call.

Rush's neighbors heard gunshots, and shortly thereafter, saw Rush and Taylor exit the apartment, stepping over Cogburn's body. Police found Cogburn's body in the doorway; his cell phone was nearby. He had died of three gunshot wounds, two in the torso and one in the leg.

1. The evidence was sufficient to authorize a rational trier of fact to find

2

beyond a reasonable doubt that Taylor was guilty of the crimes of which he was convicted.  See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.   During jury selection, the trial court read the indictment, which also named Rush as a co-indictee as to most of the crimes charged, although the court did not read the count of the indictment that charged Taylor with possession of a firearm by a convicted felon, or the count charging him with felony murder based upon that crime.  The court read the count of the indictment which charged Rush with possession of a firearm by a convicted felon.  Two potential jurors indicated that this information caused them to form an opinion about Taylor's guilt or innocence, even when it was made clear that the charge pertained only to Rush; both potential jurors were excused for cause.

Taylor now asserts that it was incumbent upon the court to inquire specifically of all the remaining potential jurors as to whether they held similar views.  However, at trial, Taylor made no such assertion or otherwise suggested error in the court's action, and told the court that he was satisfied  with the jury selection process and had no "issues" concerning it.   Accordingly, Taylor is procedurally barred from raising this issue on appeal. See *Solomon v. State*, 293

Ga. 605, 606 (2) (748 SE2d 865) (2013). To the extent that Taylor argues that this Court should consider the asserted error to constitute "plain error,"

> [i]n appeals of criminal cases, plain error review is currently limited to alleged error in three circumstances: the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b). [Cit.]

*Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012).[2] Taylor's asserted error does not fall under any of these categories.

3. The trial court admitted the testimony of Gagne as to what Cogburn told her during the telephone calls shortly before his death under the necessity exception to the hearsay rule. See former OCGA § 24-3-1 (b).[3]

> Hearsay statements may be admissible under the necessity exception of former OCGA § 24-3-1 (b) if the proponent of the evidence can show the declarant is unavailable, the statement is relevant and more probative of a material fact than other available evidence, and the statement exhibits particular guarantees of trustworthiness. [Cit.] Whether a statement is trustworthy is a matter for the trial court's discretion which will not be disturbed on appeal absent an abuse of discretion. [Cit.]

---

[2] *Durham*, supra, notes that under the "new Evidence Code [applicable to] cases tried after January 1, 2013, . . . a court [may] consider plain errors 'affecting substantial rights although such errors were not brought to the attention of the court.' OCGA § 24-1-103 (d); [Cit.]" As noted, Taylor was tried May 15-17, 2012. See Footnote 1, supra.

[3] The necessity exception is codified in the new Evidence Code at OCGA § 24-8-807.

*Johnson v. State*, 294 Ga. 86, 88 (2) (750 SE2d 347) (2013) (Footnote omitted.)

There is no question that Cogburn's statements about Taylor's actions were relevant, and that, as he was deceased, Cogburn was unavailable. *Azizi v. State*, 270 Ga. 709, 711 (2) (512 SE2d 622) (1999). At trial, Taylor challenged the particular guarantees of trustworthiness surrounding the statements, and a hearing was held at which Gagne testified that: she was Cogburn's fiancée; they had known each other for ten years, began dating a year before Cogburn's death, and had been living together for eleven months; they talked regularly during the day when not together; Gagne knew of Cogburn's marijuana sales, but he had committed to pursuing lawful activities, and told her that this was to be his last marijuana sale; Gagne had secured a job for him that was scheduled to begin the day after Cogburn was killed; and Gagne never knew Cogburn to lie to her, and she knew both Taylor and Rush. "This Court has consistently held that hearsay testimony by close, personal friends of the unavailable declarant is admissible under the necessity exception." *Devega v. State*, 286 Ga. 448, 449 (3) (689 SE2d 293) (2010) (Citation and punctuation omitted). Although Taylor posits that Cogburn was under a great deal of stress when he made the statements to Gagne, this does not create on Cogburn's part any motive to lie or the likelihood that he

would be mistaken about who had threatened him. The trial court did not err in finding the necessary guarantees of trustworthiness. See *Gibson v. State*, 290 Ga. 6, 8-9 (3) (717 SE2d 447) (2011).

Taylor also argues in this Court, as he did in his motion for new trial, that other available evidence would have been more probative than the hearsay that was admitted, although he did not raise any such issue at trial. Assuming that this objection to the admission of the evidence is preserved for appellate review, see *Moore v. State*, 295 Ga. 709, 714 (3) (763 SE2d 670) (2014), Taylor fails to show an abuse of the trial court's discretion. See *Johnson*, supra. Although Taylor speculates that co-indictee Rush could have testified to the same facts as were admitted through Gagne's testimony, there is no showing that any testimony of Rush might have been available, see *Brown v. State*, 291 Ga. 892, 896 (2) (734 SE2d 23) (2012), nor does Taylor explain why any testimony from Rush that it was Taylor who held a pistol to Cogburn's head, rather than himself, should be considered to be more probative than the statements related by Gagne. The trial court did not err in concluding that "[t]he statements admitted were more probative of the[ ] facts [related] than evidence that could otherwise be produced and offered. [Cit.]" *Watson v. State*, 278 Ga. 763, 765 (2) (a) (604

6

SE2d 804) (2004).

Judgments affirmed. All the Justices concur.

Decided March 27, 2015.

Murder. Fulton Superior Court. Before Judge Adams.

James C. Bonner, Jr., Tyler R. Conklin, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D. Morrison, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.